Martin Zwernemann, Guardian, etc., v. C. J. Von Rosenberg.

No. 2268.

Henry Brau et al. v. C. J. Von Rosenberg.

No. 2267.

1. **Descent of Homestead in Insolvent Estates.**—Under the Constitution (art. 16, sec. 52) and the Revised Statutes (arts. 1817, 1993, 2002, 2007, and 2008), the homestead in insolvent estates descends as other property, subject to use by surviving widow or minor children as provided, and is not liable for the debts of the deceased head of the family.

2. **Same—Construction of Statutes.** — If a part of a statute repugnant to the Constitution can be stricken out and that which remains is complete in itself and capable of being executed in accordance with the legislative intent, such part remaining must be sustained.

3. **Same.**—So much of article 2002, Revised Statutes, as provides a different rule of descent from that in article 16, section 52, of the Constitution, must be disregarded as void, but the other provisions of the statute are not dependent upon this and can stand as the law, not being unconstitutional.

4. **Statutes Discussed.**—The several statutes of descent of exempt property in this State are discussed.

Appeal from Fayette. Tried below before Hon. H. Teichmueller. The opinion states the case.

*Brown & Dunn,* for appellants. — Under the facts, the conclusions should have been that the estate of J. C. Brau being insolvent, and all

the property being exempt, it vested upon his death, absolutely and freed from all his debts, in his widow and minor children and unmarried daughters, and that upon the death of Caroline Brau her interest in said property vested, still remaining freed from all claims of creditors, in her children.  Green v. Crow, 17 Texas, 188; Reeves v. Petty, 44 Texas, 252.

*Moore, Duncan & Meerscheidt,* for appellee.—1. It is a well settled doctrine in this State that a homestead is exempt from forced sale only so long as it is used as such.  Whenever it is abandoned by the parties it then becomes liable to execution or to pay debts.  Cox v. Shropshire, 25 Texas, 115, 116.

2. That it is liable for the debts of deceased persons is also a well settled doctrine.  Edmiston v. Long, 17 Texas, 135; Givens v. Hudson, 64 Texas 471.

GAINES, ASSOCIATE JUSTICE.—At the last term of this court at this place an opinion was delivered in these cases and a judgment entered reversing the decree of the lower court and remanding the cause.  The appeal and the writ of error were by different parties from the same judgment.  Within the fifteen days the appellant and the plaintiffs in error practically joined the appellee, who was also the defendant in error, in a motion to set aside the judgment of reversal and to grant a rehearing—waiving the error for which the judgment had been reversed.  That error was in proceeding to judgment in behalf of appellee, who was plaintiff below, without proof that no other debts except his own existed against the estate of the defendant's ancestor.  The object of the waiver was to obtain a decision of the courts upon the merits of the case.

The plaintiff below, as a creditor of one J. C. Brau, deceased, sought to recover of plaintiffs in error and the wards of appellant on the ground that as children and heirs of the decedent they had received property belonging to his estate subject to the payment of his debts.

The trial judge filed his conclusions of fact and law, the substance of which is correctly stated in appellant's brief as follows:

"1.  That J. C. Brau did make the said notes, as alleged by plaintiff; that plaintiff is the owner of them, and that there is due him on said notes $730.78—a community debt.

"2.  That J. C. Brau died at his home in Fayette County, Texas, September, 1883, and Caroline Brau died at said home March 7, 1885.

"3.  That said J. C. Brau and Caroline Brau were husband and wife, heads of a family consisting of themselves and their children, the defendants, Henry, Amelia, Conrad, Dorothea, John, Albert, Augusta, and Robert, and lived together as a family on said land, it being their homestead of 151 acres, and that they had no other land or homestead.

"4.  That after J. C. Brau died, his widow, Caroline Brau, continued

until her death to occupy said land as a homestead with her children, whose names, ages, and sexes are as follows, viz.: Henry, a male, 26 years old; Amelia, a female, 24 years old; Conrad, a male, 23 years old; Dorothea, a female, 20 years old; John, a male, 16 years old; Albert, a male, 14 years old; Augusta, a female, 12 years old; and Robert, a male, 8 years old.

"5.    That all said children lived with their father and mother as a family on said homestead until the father died, and afterwards with their mother till she died, except Amelia, who married and moved off between the dates of her father's and mother's deaths.

"6.    That after the mother died said children, except Amelia, continued to live on said homestead as a family, and they have no other homestead, nor did their mother before her death acquire any other homestead.

"7.    That both J. C. and Caroline Brau died intestate and insolvent.

"8.    That Caroline qualified as community survivor in the County Court of Fayette County; that all the estate was community, and, except $720 in money and cotton, was exempt property; that said $720 in money and cotton was paid by Caroline before her death, as follows, viz.: $595 to the extinguishing in part of vendor's liens, valid debts, on said homestead, and the balance to the extinguishment of valid debts against the community estate, such as medicines and medical bill incurred in last sickness and funeral expenses of the husband.

"9.    That of said community property only the following came into the hands of said children, viz.:    (1) The homestead, worth $1820.67; (2) two horses, worth $100; (3) ten head of cattle, worth $80; (4) twenty hogs, worth $60; (5) farming tools, worth $65; (6) wagon and harness, worth $40; (7) buggy and harness, worth $30; (8) household and kitchen furniture, worth $130; and that all of it would have been exempt by law from sale for the payment of any debt of the estate of either J. C. Brau or Caroline Brau, whose estates were insolvent.

"10.    That there are other valid and subsisting community debts unsatisfied against the estates of J. C. and Caroline Brau besides that of plaintiff, but the amount is not shown by the evidence.

"11.    That there is a duly opened guardianship on the estates of John, Albert, Augusta, and Robert Brau in the County Court of Fayette County, and M. Zwernemann, defendant, is guardian, who qualified May 15, 1885, but no order has been made in the County Court concerning the occupancy of the homestead, nor has any been applied for."

Upon these facts the court concluded as a matter of law that the minor defendants were entitled to the use of the homestead during their minority, but that subject to this use the inheritance of each of the defendants in the property was liable to sale for the payment of the ancestor's debts.

Judgment was rendered accordingly.  For the purposes of this opinion the details of the judgment need not be stated.

We are of opinion that the court erred in holding that the defendants inherited the homestead charged with the payment of their father's debts. The constitutional provision which regulates the descent of the homestead reads as follows:

"On the death of the husband or wife, or both, the homestead shall descend and vest as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having jurisdiction, to use and occupy the same."  Const., art. 16, sec. 52.

It having been decided under the Probate Act of 1848 that in insolvent estates the widow and minor children took an absolute title to the homestead to the exclusion of the adult heirs (Horn v. Arnold, 52 Texas, 161), it was probably the purpose of this provision to prevent a repetition of that legislation.  It is clear that it was not intended to determine the disposition of the homestead after the death of the owner as between his heirs and his creditors further than to designate it as a home for the surviving husband or wife and for the minor children under the prescribed limitations.  In the previous Constitutions of the State the disposition of the homestead after the death of the owner was left wholly to the wisdom of the Legislature.  It is so also in the present Constitution, except as to the manner of its descent and the use reserved to the surviving spouse and the minor children.  The language "shall descend and vest as other property of the deceased" was employed, we think, to determine the persons who should take and their respective interests, but not the conditions which were to be imposed upon the inheritance.  It was not, in our opinion, intended that the homestead should descend charged with the payment of debts as other property.

When the present Constitution was adopted the policy of exempting from administration for the payment of debts such property of the decedent as had been exempt from forced sale during his lifetime had been steadily pursued by our Legislatures.  In this we have found "no variableness nor shadow of a turning."  First, by the Act of the 9th of January, 1843, it was provided that "the same amount of property and the same kind, if so much belong to the estate in kind, that is exempt from sale under *fieri facias* or execution  *  *  *  be and the same is hereby declared to be exempt from sale by order of any Probate Court."  By the law of 1846 the exemption was enlarged by providing that in the event there should not be among the effects of the deceased all of the specific

articles exempt from forced sale by the Constitution and laws of the State, a sale of sufficient property should be ordered in order to purchase such articles for the use of the widow and children.    Pasch. Dig., art. 1305, note 481.

The rights of the widow and children were still further enlarged by the Act of March 20, 1848; and in Green v. Crow, 17 Texas, 180, it was held that under that act, in case of an insolvent estate, the widow and children took an absolute title to the exempt property set apart to them.    The probate law of 1870 seems to give emphasis to the provision that as a rule creditors have no claim upon the property of a decedent previously exempt from forced sale, by prescribing that in case a constituent of the family survive such property "does not form any part of the estate of a deceased person."

In Scott v. Cunningham, 60 Texas, 566, this provision was given a construction in harmony with the former laws upon the same subject.    This was the law in force when the existing Constitution took effect.    In our opinion it was not repugnant to any provision of that instrument, and therefore continued in force until repealed by subsequent legislation.    Under none of the laws cited was the exempt property subject to be sold by the order of the court of probate in case a constitutent of decedent's family survived.

When we turn to our existing statutes the intention of the Legislature is clear.    Article 1993 of the Revised Statutes reads as follows:  "At the first term of the court after an inventory, appraisement, and list of claims have been returned, it shall be the duty of the court, by an order entered upon the minutes, to set apart for the use and benefit of the widow and minor children and unmarried daughters remaining with the family of the deceased all such property of the estate as may be exempt from execution or forced sale by the Constitution and laws of the State, with the exception of any exemption of one year's supply of provisions." Article 2002 also provides that "should the estate upon final settlement prove to be insolvent, the title of the widow and children to all the property and allowances set apart or paid to them under the provisions of this and of the preceding chapter shall be absolute, and shall not be taken for any debts of the estate except as hereinafter provided."    The debts thereinafter provided for are certain liens and preferred claims. Arts. 2007, 2008.    This language is explicit and of itself is not difficult of construction.    With regard to the homestead there is difficulty growing out of what we conceive to be a conflict between that article and the section of the Constitution previously quoted.    Since the exempt property is to be set apart and delivered to the widow, minor children, and unmarried daughters, to the exclusion of adult children not females and unmarried, we think by the literal interpretation of article 2002 it was meant that the property should in case of insolvency descend absolutely

to the widow, minor children, and unmarried daughters, and that the other children were to be excluded. But we are of opinion that section 52 of article 16 of the Constitution prohibits this disposition of the homestead, and, as before intimated, that it was, in part at least, its immediate purpose to prohibit just such a law.

So much of article 2002 as attempts to provide that the homestead of a decedent whose estate is insolvent shall descend to the widow, minor children, and unmarried daughters, to the exclusion of other persons entitled to the real estate of the ancestor under our general laws of descent and distribution, can not take effect. But we do not think that it follows that because the Legislature has attempted to exceed its authority in this particular all the article should be held wholly inoperative and void. The leading object of the provisions of the Revised Statutes upon this subject was to prescribe that the exempt property should not be subject to sale by the order of the Probate Court for the payment of debts generally, in the event either husband or wife, or a minor child or an unmarried daughter survived the owner. This object is clearly manifested by other articles of the Revised Statutes relating to the administration of the estates of deceased persons. Article 1817 provides that when a person dies his property shall descend to his heirs, but also provides that "all of such estate   *   *   *   except such as may be exempted by law from the payment of debts shall still be liable and subject in their hands to the payment of the debts of such   *   *   *   intestate." Article 2007 prescribes that "the homestead shall not be liable for the payment of any of the debts of the estate except for the purchase money thereof, the taxes due thereon, or for work and material used in constructing improvements thereon," etc. This is to be construed in connection with and to be limited by article 2002, which applies only to homesteads of decedents who leave a constituent of the family surviving. Givens v. Hudson, 64 Texas, 471. Thus limited language could not make the intention more clear to continue after death the exemption which before existed.

The rule for the construction of statutes in partial conflict with the Constitution is, that if the portion repugnant to the fundamental law can be stricken out and that which remains is complete in itself and "capable of being executed in accordance with the legislative intent it must be sustained." Ex Parte Towles, 48 Texas, 421, quoting Cool. on Const. Lim., 178. If the unconstitutional provision be but incidental to the main purpose and be not essential to give effect to the statute, such part may be rejected, leaving the remainder to stand. The provisions we have quoted clearly show, we think, that it was the legislative intent to utterly exempt the homestead from the claims of the general creditors of the estate, provided a constituent of the family survived the decedent, and in case the estate was insolvent to remove it beyond the pale of administration. This is in accordance with all previous legislation and is not

repugnant to the Constitution. So much of the statute as attempts to make the homestead of an insolvent to descend in a manner different from other real property is prohibited by the Constitution and is void. But the other provisions of the statute are not dependent upon this. They can have effect without it, and should therefore stand. The homestead should be held exempt from the payment of debts and to descend not as prescribed in article 2002, but as provided in the Constitution.

It is clear that if property is not subject to sale by order of the Probate Court for the payment of debts, the heirs who have received the property, there being no administration, can not be charged with its value at the suit of the creditor.

It follows from what we have said that the homestead in this case could not be subjected to the payment of plaintiff's debt. The judgment must therefore be reversed and will be here rendered in favor of the defendants in the court below.

*Reversed and rendered.*

Delivered March 14, 1890.

STAYTON, CHIEF JUSTICE, DISSENTING.—While concurring in the reversal of the judgment, I am of opinion that the interest inherited by those who were adults fixes upon them liability for debts of their ancestors to extent of value inherited.

Under the terms of the Constitution declaring that "the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution," there can be no doubt that each child of J. C. and Caroline Brau inherited equal shares of the tract of land on which they lived.

The main purpose of so much of the Constitution was to deny, as had been before allowed, to the widow and minor children in case of insolvent estates the right to take absolutely against adult brothers or sisters as well as against creditors.

The statute provides that "when a person dies * * * all of his estate, * * * whether devised or bequeathed or not, except such as may be exempted by law from the payment of debts, shall still be liable and subject in their hands to the payment of the debts of such testator or intestate; and whenever a person dies intestate all of his estate shall vest immediately in his heirs at law, but, with the exception aforesaid, shall still be liable and subject in their hands to the payment of the debts of the intestate." Rev. Stats., art. 1817.

This statute was construed in Givens v. Hudson, 64 Texas, 471, in which it was correctly held that upon the death of the surviving parent and owner of the homestead, his adult heirs not constituents of his family could not hold the land freed from the claims of their father's creditors.

It was there said that whether within the meaning of the article above referred to, property was "exempted by law from the payment of debts" depended on the status or condition of the person claiming the exemption, and not upon that of a former owner from whom the inheritance might come.

"The thing is not exempted to the child or widow because it was exempted to the father or husband who was the head of the family, but because the child or widow was and remains a constituent of the family; and when this relation ceases before the death of the intestate there is nothing in reason, nor in the letter or spirit of the law, which can give the exemption to one not sustaining such a family relation."

Any other holding is based on the theory that homestead character once attaching to property inheres, and as an estate descends to whomsoever may inherit the property.

This has been steadily denied. Tadlock v. Echols, 20 Texas, 782; Brewer v. Wall, 23 Texas, 585; Johnson v. Taylor, 43 Texas, 122; Grothaus v. De Lopez, 57 Texas, 672; Shannon v. Gray, 59 Texas, 251; Ashe v. Yungst, 65 Texas, 636.

When we look to laws exempting land from sale for payment of debts, as we must to understand what exemption is meant in the statute before quoted, we find that by this is meant the homestead of a family. Rev. Stats., art. 2335.

In case of the death of the husband and father the statute declares that "at the first term of the court after an inventory, appraisement, and list of claims have been returned, it shall be the duty of the court, by an order entered on the minutes, to set apart for the use and benefit of the widow and minor children and unmarried daughters remaining with the family of the deceased all such property as may be exempt from execution or forced sale by the Constitution and laws of the State, with the exception of one year's supply of provisions." Sayles' Civ. Stats., art. 1993.

Other articles direct to whom the exempt property other than homestead shall be delivered, and declare that "in all cases the homestead shall be delivered to the widow, if there be one, and if there be no widow, to the guardian of the minor children and unmarried daughters, if any, living with the family."

These laws practically declare that the unit of the family entitled to exemption in case of the death of its natural head shall be composed of the surviving widow, minor children, and unmarried daughters remaining with the family. If both parents be dead, that the family may then consist of the minor child or children and unmarried daughters, if any, residing with family of the deceased. If there be neither minor child, children, nor unmarried daughter, the husband or wife surviving, the family still has a constituent, and all the interest in the property consti-

tuting the homestead owned by those who make up the family is absolutely exempted from sale for payment of debts of the ancestor.

Under the terms of the Constitution there is a further right in such surviving parent or minor child or children as against adult heirs who inherit an equal interest in the fee with the minors, which is that the surviving parent has the right to use the adult's share inherited " so long as the minor may elect to occupy the same as a homestead," and the minors have the right to use the adult's share "so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction, to use and occupy the same." Const., art. 16, sec. 52.

This burden the Constitution places on the inheritance of the adult, and no person claiming through him can acquire a right he had not.

The statute further provides that "should the estate, upon final settlement, prove to be insolvent, the title of the widow and children to all the property and allowances set apart or paid to them under the provisions of this and the preceding chapter shall be absolute, and shall not be taken for any of the debts of the estate, except as hereinafter provided." Sayles' Civ. Stats., art. 2002.

It could not have been intended by this statute to declare that the title of minor heirs, there being adults, should be absolute to the entire homestead property if the estate was insolvent, nor that the widow's title to such property, if there were no minor children, should be absolute as against adults in such a case; for the effect of such legislation would be to divest the estates of adults, which the Constitution declares shall vest in homestead property as in other property owned by a deceased parent, subject, however, to the burden before referred to.

An estate which the Constitution declares shall vest in all the children of a deceased person equally can not be divested nor the rule of descent so changed by statute as to take from the adult and give to the widow or minors their shares, on the ground that the estate is insolvent, nor upon any other ground.

The reasonable construction of that statute is that the Legislature intended, in case an estate was insolvent, to vest the interests owned by a widow, minor children, or unmarried daughters remaining with the family in them absolutely, freed from all claims of creditors of the estate of the deceased person, and, as does the Constitution, to secure them in the right to *use* the shares of adults as provided by the Constitution, in like manner freed from claims of creditors of the estate.

They are to hold absolutely " all the property and allowances set apart or paid to them." Does the word "property" as here used mean the land which constituted the homestead, or does it mean the interests therein inherited or owned by those to whom it is set apart, together with the right to use the shares of adults as the law provides?

If it means the first, it is in violation of the provision of the Constitution before referred to; but we ought not so to construe it unless its language will not admit of any other reasonable interpretation.

If it means the latter, then it is not in conflict with the Constitution, and is in harmony, as far as it operates, with the policy evidenced by decisions made under laws existing before the present Constitution was adopted, which, to the prejudice of adult heirs, gave to the widow and minor children, or such of them as there were, the exempted property belonging to insolvent estates of deceased persons.

The power to make such laws exists under the present Constitution as did it under former Constitutions, except that the right of the adult heirs in homestead property passing to them by inheritance can not thus be divested.

The word "children" used in article 2002 evidently refers to the children mentioned in article 1993 and referred to in succeeding articles, and means none other than minor children and unmarried daughters remaining with the family of the deceased, and the property so set apart to them can be none other than their own shares of that property taken by inheritance and the use of the shares inherited by adults for the term prescribed. So interpreting the statute, the implication is that the shares of adults not recognized as constituents of the family are subject to sale for payment of debts of the estate of the deceased person.

The statutes refuse to recognize adults other than unmarried daughters remaining with the family as of its constituents in whose favor the homestead right and consequent exemption exist; and nothing short of a clear statutory declaration that property rights of such persons shall be protected from sale to pay the debts of the ancestor will justify a holding that the interests of such persons are exempt. An exemption can not be broader or of longer duration than the estate on which it is based, and when given for the protection of a collection of persons or a single person recognized as a family, it can not extend to those whom the law excludes from that protected unit or association.

The proposition is that the property of the adults is to be protected from sale, not because they are entitled to the exemption, but because other persons having a like property right in the same tract of land are so situated as to be entitled to have their own interests exempted. As well might one of two tenants in common, a single man, claim that his interest was exempted from sale for payment of his debts because his cotenant having a family and occupying the land as his home was entitled to exemption to the extent of his interest, that not exceeding the homestead limit.

Laws of this State granting homestead exemption are most liberal, and the interests intended to be protected through them should be most strictly guarded; but such laws ought not to be given a construction not

imperatively demanded by their letter or spirit which will lead to their prostitution to uses foreign to those contemplated by their makers.

The case before us does not involve interests of any great pecuniary magnitude, but there is a principle involved in it far reaching in its application—involving, as it largely does, the proposition once a homestead always a homestead; home for one or a few, and exemption for many ownerships not occupant.

There may be an hundred who will take by inheritance, but the property will be exempt in their hands if one minor child or widow exists for whom a probate may set it apart for a time to be used as a home, if the rule contended for be established.

If the exemption does once thus attach, the property passes forever beyond the reach of creditors of a deceased person's estate. Cases suggest themselves illustrative of the provisions of exemption if the rule announced be established.

Those who take by inheritance are liable for debts of the ancestor only because they receive debt paying assets of the estate, and the extent of this measures the liability. Those who receive property freed from that liability assume no obligation to creditors.

The estate in question may be assumed to be insolvent, and I see no reason why children such as articles 1993 and 2002 embrace may not hold their interests in the homestead as well as the right to use the shares of the adults, for a time freed from the claims of creditors to interfere with the possession or to subject their interests to sale. This seems to be the spirit of article 2002.

I have, however, a deep conviction that adult heirs are liable to creditors of the estate for a sum equal to the value of their interests in the homestead, which may be sold under execution in satisfaction of that liability. A purchaser at such a sale, however, would take the interests subject to the right of the minors to use under the terms of the law.

That the interests of the adults may be in a sense remainders interposes no obstacle to a sale under execution. If the Legislature had declared that property used as homestead by an ancestor should remain homestead after his or her death, notwithstanding most or all of the children were adults and in no manner constituents of the family, then it would be the duty of the courts to give effect to such declaration, unless the Constitution places a limitation on the power of the Legislature to create homestead exemptions.

I find no law making such a declaration, and am unwilling to assume its existence in the absence of clear and explicit language not fairly requiring it.