## MRS. MARY ROOTS v. B. T. ROBERTSON, ADMINISTRATOR, ET AL.

### No. 869. Decided February 19, 1900.

**1. Homestead—Death—Exemption Not Continuing.**

Conceding that an unmarried son supporting his mother is entitled to the exemption as homestead of his home occupied by them, the mother can not hold such homestead after the death of the son, as against his creditors; since she can not inherit his exemption, nor is she one for whose use it can be set aside under the terms of section 52, article 16, of the Constitution, or article 2046 of Revised Statutes. (Pp. 370, 371.)

**2. Same.**

The exemption expressed in Constitution, article 16, section 50, applies to property while the head of the family is living; but furnishes no rule for its disposition after his death. This is left to the Legislature except as to the manner of its descent and the use reserved to the surviving spouse and minor children; to these the homestead exemption does not descend as heirs, but they take it, exempted from the debts of the ancestor, by the terms of the statute and Constitution. (P. 371.)

**3. Same—Descent and Distribution.**

The effect of section 52 of article 16 of the Constitution is to change the rule established under the Act of 1848 giving to the surviving widow and minor children absolute title, to the exclusion of other heirs, to the homestead of an insolvent set aside to them, and to provide that in such case the title should vest in the heirs, but the widow and minor children should have a right to use it under the limitations expressed in the Constitution. (P. 372.)

**4. Same—Constitution.**

The portion of article 2055, Revised Statutes, which gives to the widow and minor children absolute title to the homestead in case the estate be insolvent is in conflict with section 52 of article 16 of the Constitution and to that extent void as to the other heirs. (P. 372.)

**5. Homestead—Descent and Distribution—Use by Surviving Widow and Minors.**

Upon the death of one who was the head of a family, leaving a widow and minor children or either, it is made the duty of the county court to set aside the homestead and other exempted property to such widow and minor children, who would be entitled to the use of the homestead under the limitations of section 52 of article 16 of the Constitution; but the title to the property would vest in all of the heirs; not, however, subject to the debts of the deceased, because, being set apart by the court, it is withdrawn from the administration of his estate, and would not afterwards become subject to the payment of debts if not used as a homestead. (P. 372.)

**6. Same—To Whom Homestead Set Aside.**

There is no provision of the law that authorizes a court to set apart exempt property of an estate to the surviving constituents of every family to which it may have been exempted. The constituents so entitled are named in the law and the Constitution, and the mother of deceased is not so named and has no homestead right in the property. (Pp. 372, 373.)

**7. Homestead—Devise or Descent.**

The exemption of property from forced sale can not be transmitted by descent nor transferred by will; the rights of a creditor of deceased attach to the homestead upon his death in preference to those claimed by a devisee under his will. (P. 373.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Hopkins County.

The proceeding was by Mrs. Roots, to subject to the payment of a fourth-class claim established by her against the estate of J. A. B. Putman, the homestead of deceased, which he had bequeathed to his mother for life, with remainder to his sister, Mrs. Dinsmore, and his professional library, which he had bequeathed to Dinsmore. Mrs. Roots was denied the relief sought in the probate court, and again, on appeal, in the District Court, and on her further appeal this was affirmed in the Court of Civil Appeals, whereupon she obtained writ of error.

*H. C. Hynson*, for appellant.—An unmarried son can not acquire a homestead and by will convey it to his mother or sister, so that they can take it, after his death, free from the claims of his creditors, where his estate is insolvent; nor can the mother take it as exempt, under claim of being a constituent of his family. Munzenberger v. Boehme, 2 Texas, U. C., 390; Whitehead v. Nickelson, 48 Texas, 517; Howard v. Marshall, 48 Texas, 471; Roco v. Green, 50 Texas, 483; Horn v. Arnold, 52 Texas, 161; Andrews v. Hagadon, 54 Texas, 577.

Since the adoption of section 52, article 16 of the Constitution, and articles 2046 and 2053, Revised Statutes, 1895, no person but the surviving husband or wife, minor children, and unmarried daughters of the deceased owner of the property is entitled to take the homestead freed from the claims of creditors. Phillips v. Price, 34 S. W. Rep., 784; Givens v. Hudson, 64 Texas, 472; Zwerneman v. Von Rosenberg, 76 Texas, 522; Childers v. Henderson, 76 Texas, 664.

An insolvent person can not dispose of his property by will, so that the legatee can take the same under the will, until the debts of the estate are paid, unless he takes the bequest subject to claims of creditors. Rev. Stats. 1895, arts. 5333, 5334; Hall v. Fields, 81 Texas, 553; Hamm v. Hutchins, 46 S. W. Rep., 873.

*Craddock & Looney, Perkins, Gilbert & Perkins, B. W. Foster,* and *B. F. Crosby,* for appellees Dinsmores; *J. H. Dinsmore,* for Robertson, administrator.—The undisputed facts in this case show that J. A. B. Putman was at the time of his death the head of a family composed

of himself and mother, Mrs. Sarah E. Putman, and that she, as a surviving constituent of said family, remained at his death. Barry v. Hale, 2 Texas Civ. App., 668; Clark v. Goins, 23 S. W. Rep., 703; Wolfe v. Buckley, 52 Texas, 641; Roco v. Green, 50 Texas, 483.

All the properties in controversy being exempt to J. A. B. Putman as the head of a family and in his professional capacity, he had the power by will to pass a good title thereto free from the claims of creditors. Rev. Stats., arts, 2395 2396, 2397; also arts. 1869, 5333, 5334, 5337; Myers v. Myers, 12 S. W. Rep., 933; 22 S. W. Rep., 606; 32 S. W. Rep., 677; 12 Bush., 534; Hall v. Fields, 81 Texas, 555.

On the death of J. A. B. Putman, Mrs. Sarah E. Putman, his mother, was a surviving constituent of the family, and the estate being insolvent, independent of the will, the legal title to the property in controversy would descend and vest in the heirs at law of J. A. B. Putman, free from the claims of creditors. Constitution of 1876, art. 16, secs. 49, 50, 51, 52; Rev. Stats. 1895, arts. 2365, 2397, 2046, 2056, 2057, 2060; Clark v. Goins, 23 S. W. Rep., 703; Givens v. Hudson, 64 Texas, 471; Childress v. Henderson, 76 Texas, 667; Zwernemann v. Von Rosenberg, 76 Texas, 522; Barry v. Hale, 2 Texas Civ. App., 668; Griffie v. Maxey, 58 Texas, 210; 83 Texas, 14.

On the death of J. A. B. Putman, Mrs. Sarah E. Putman, his mother, was a surviving constituent of the family, and the estate being insolvent, the legal title to the property in controversy passed to Stella P. and J. H. Dinsmore under the terms of the wills of J. A. B. Putman and Sarah E. Putman, freed from the claims of the creditors of J. A. B. Putman.

The law library, furniture, Encyclopedia Britannica, and gold watch, being such properties as were exempt to J. A. B. Putman as the head of a family, on his death, a constituent of the family remaining, all of said exemptions, independent of the will, would pass under the law to the heirs of J. A. B. Putman, free from the debts of creditors. Cameron v. Morris, 83 Texas, 14; Childress v. Henderson, 76 Texas, 664; McDougal v. Bradford, 80 Texas, 558

*E. B. Perkins,* for defendants in error, in support of a motion for rehearing, which was overruled, argued.—This court quoted the following from the opinion of Chief Justice Gaines, Zwernemann v. Von Rosenberg, 76 Texas, 525: "In the previous Constitution, the homestead after the death of the owner was left wholly to the wisdom of the Legislature. It is so also in the present Constitution, except as to the manner of its descent and use, reserved to the surviving spouse and minor children." I respectfully submit that this language is not to be taken in its broadest sense. Suppose, for instance, there was no statute on this subject of setting apart the homestead for the use of the widow and minor children, and the Constitution remained as it was before the adoption of section 52, article 16, and the homestead was upon the separate property of the husband. Upon his death would the homestead be subject to his debts? If so, what would you do with the constitu-

tional provision that the homestead of the family should be exempt from forced sale? The exemption is not to the owner of the homestead. It is not to the head of the family. It is to the family. It could not be subject to any debts, except the debts of the owner. If the intention had been to make it liable for the debts of the owner after his death, the constitutional exemption would have been worded very differently. It would have read: "The homestead of a family shall be, and is hereby protected from forced sale for the payment of all debts of the owner thereof during his life, except," etc. On the contrary, the exemption is of the homestead of a family, from forced sale, for the payment of all debts, etc. There is no limitation upon the time of this exemption. It is in nowise qualified. Since the time it was adopted in the present Constitution, it has never been held that it was subject to the payment of debts upon the death of the owner, leaving a constituent of the family surviving. At least, I have been unable to find such a decision. Sossaman v. Powell, 21 Texas, 664, was a part of the construction of the constitutional provision at the time that it was incorporated in the present Constitution. Section 52, article 16, of the Constitution does not in anywise extend the exemption of the homestead from forced sale for the payment of debts. It does not purport to do so. It simply provides the manner of its descent and prohibits its partition among the heirs under specified circumstances. Neither does it in anywise limit the exemption. I admit that the act of the Legislature might extend the exemption if it were possible to make it broader than it is in the Constitution, but such acts of the Legislature can in nowise limit it.

The articles of the Revised Statutes with regard to the "estates of decedents," quoted by the court in the opinion, were never intended by the Legislature in anywise to affect the question of exemption. Article 2046 simply provided for the setting apart of "all such property of the estate as may be exempted from execution and forced sale by the Constitution and laws of the State." This left the question of exemption to be determined upon the Constitution and the laws. Because it named certain persons to whom the property should be set apart it in nowise affected the constitutional provision or the provision of the laws. So we must look elsewhere for what property was referred to. When we do this we see, from section 50, article 16, of the Constitution, that there is a homestead exempt to the family. Then turning to the laws we see that article 2395 provides that "the following property shall be reserved to every family exempt from attachment or execution, and every other species of forced sale for the payment of debts except as herein provided. 1. The homestead of the family * * * 5. All tools, apparatus and books belonging to any trade or profession," etc. These were clearly the laws referred to, and they exempt the homestead of the family from every species of forced sale for the payment of debts.

In order to make clear that the statutes on "estates of decedents"

did not intend to change this rule, there was inserted therein article 2060, which says "the homestead shall not be liable for the payment of any debts of the estate, except," etc. This article is absolute and unequivocal, and in nowise limited. It can not be held to mean anything other than what it says. To hold that the homestead of the family, a constituent surviving, can be made liable for the payment of a debt, is by judicial construction to repeal this statutory provision. Disguise it as we may, this is true. Not only this with reference to the statutes themselves, but this court has heretofore given that construction to the statutes quoted in the case of Childress v. Henderson, 76 Texas, 667.

This construction of the Constitution and laws is all we are contending for in this case. And the decision in this case overrules the opinion in the case referred to without mentioning it.

The following portion of the court's opinion in this cause is asked to be reconsidered: "There is no provision of the law that authorizes a court to set apart exempt property of an estate to the surviving constituents of every family to which it may have been exempted. The constituents of a family who are entitled to a homestead and other exempted properties, upon the death of the head, are named in the law and the Constitution. The mother of the deceased is not named, and Mrs. Putman had no homestead right in the property."

This conclusion is arrived at upon the ground, that because the Legislature has not authorized a court to set apart the homestead to the mother of the deceased, she being a constituent member of the family, the constitutional exemption is thereby destroyed. This we suggest is unsafe. It leaves the self-acting provision of the Constitution open to be destroyed by the failure of the Legislature to enact any law in conformity with it. It is a holding that the enactment of a law on a matter of practice and procedure in courts, and the omission to state things therein that should have been stated, will destroy a positive, unequivocal declaration of the Constitution.

BROWN, ASSOCIATE JUSTICE.—By the death of her husband, Mrs. Sarah E. Putman was, in 1859, left a widow with a number of children, among them, a son, J. A. B. Putman, and a minor daughter, Stella Putman, now Mrs. Dinsmore, one of the defendants in error. Mrs. Putman continued a widow until her death in July, 1895; she had no homestead of her own at any time, and she and her minor daughter lived with and were supported by J. A. B. Putman, who was never married. The son was in the Confederate army from 1862 until 1865. After his return, he, with his mother and minor sister, lived with another sister for a short time, after which J. A. B. Putman established his home in the town of Tarrant, Hopkins County, Texas, where he resided with his mother and sister Stella until the year 1870, when he bought the lot in Sulphur Springs now in controversy and built a house

and outbuildings on it in about the year 1872. He removed from the town of Tarrant to Sulphur Springs, taking his mother and sister with him, carrying the household and kitchen furniture, which all belonged to him. From time to time, additions were made to the dwelling-house and the household and kitchen furniture was replenished as it became necessary. He supported his mother and sister. They had no means of their own and relied upon him. Mrs. Putman had another son and a daughter. Some years before J. A. B. Putman died, his sister Stella married J. H. Dinsmore, and she and her husband resided in the house with her brother a part of the time; after the death of J. A. B. Putman, which occurred in January, 1895, Mrs. Dinsmore and her husband resided with her mother. The homestead property in controversy was at no time worth a sum exceeding $5000. J. A. B. Putman was a practicing lawyer during all of the time that he resided there and up to the time of his death, and the library and office furniture in controversy belonged to him and were used in connection with the practice of his profession. After the death of J. A. B. Putman, his mother died in July 1895. She resided, from the death of her son to the date of her own death, on the property in question. J. A. B. Putman made a will in which he gave his real estate to his mother for her life, remainder to Mrs. Dinsmore; also to his mother absolutely the household and kitchen furniture; he bequeathed his law library and some other personal effects to J. H. Dinsmore. The will was duly probated in Hopkins County.

Mrs. Sarah E. Putman left a will in which she devised all of her real estate to her daughter, Mrs. Dinsmore. The will was duly probated in Hopkins County.

During the time that Mrs. Putman resided with her son, J. A. B. Putman, now deceased, she performed all of the duties of a matron, keeping and caring for the house of a family, and he provided for his mother and sister as the head of a family would for his own family of wife and children, if they had been such.

B. T. Robertson was appointed administrator of the estate of J. A. B. Putman and Mrs. Mary Roots presented her claim against the estate, which was allowed and classed as a fourth-class claim. The estate proved to be insolvent and all of the property, except that which is here in controversy, has been sold and all of the debts of the first, second, and third class have been discharged. Mrs. Roots made an application in the probate court of Hopkins County to have the property subjected to the payment of her claim, which was refused by that court and appeal taken to the District Court, which resulted in a like judgment. The Court of Civil Appeals affirmed the judgment of the District Court.

If we concede, for the sake of argument, that J. A. B. Putman and his mother, while living together, constituted a family within the meaning of article 16, section 50, of the Constitution, so that the exemption expressed in that section would apply to the head of the family in his life, still the mother can not hold the homestead after the death of her

son, because she can not inherit the exemption which was accorded to him and does not come within the terms of section 52 of article 16 of the Constitution, nor within the provisions of article 2046 of the Revised Statutes.

The language, "the homestead of a family shall be and is hereby protected from forced sale for the payment of debts," etc., found in the fiftieth section of article 16 of our present Constitution, is practically the same as that embraced in the Constitution of 1845 on the same subject, and has been so expressed in each subsequent Constitution. In the case of Sampson & Keene v. Williamson, 6 Texas, 110, the term "forced sale" was by the court defined as follows:   "A forced sale has been defined to be a sale made at the time and in the manner prescribed by law, in virtue of an execution issued on a judgment already rendered by a court of competent jurisdiction; or, in other words, a forced sale is one which is made under the process of the court and in the mode prescribed by law."   This was the recognized meaning of the words "forced sale" when embodied in the present Constitution and they were evidently understood and used in that sense by the members of the convention, for they employed the following clear and explicit language to qualify and limit the definition as applied to deeds of trust upon the homestead:   "No mortgage, trust deed, or other lien on the homestead shall ever be valid except for the purchase money therefor or improvements made thereon as hereinbefore provided, whether such mortgage or trust deed or other lien shall have been created by the husband alone or together with his wife, and all pretended sales of the homestead involving any condition of defeasance shall be void."   This language shows that attention was called to the definition given to "forced sale."   The sale by deed of trust, excluded by the interpretation of the court from the exemption, is prohibited by this provision, but the language "forced sale" was readopted as construed.   The exemption expressed in section 50 applies to property while the head of the family is living, but furnishes no rule for its disposition after his death.   Givens v. Hudson, 64 Texas, 473; Zwernemann v. Von Rosenberg, 76 Texas, 525.   In the last named case, Judge Gaines, speaking for the court, said:   "In the previous Constitution of the State, the disposition of the homestead after the death of the owner was left wholly to the wisdom of the Legislature.   It is so, also, in the present Constitution, except as to the manner of its descent and the use reserved to the surviving spouse and the minor children."

It has been frequently and uniformly held in this State that the homestead exemption does not descend to heirs, but they take the property, under the statute and the Constitution, exempted from the debts of the ancestor, not because it was exempted in his hands, but because they come within the class of persons named in the Constitution and the law.   In the case of Givens v. Hudson, cited above, Judge Stayton said:   "The thing is not exempted to the child or widow because it was exempted to the father or husband, who was the head of the family,

but because the child or widow was and remained a constituent of the family."

Section 52 of article 16 of the Constitution is in the following words: "On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction, to use and occupy the same." The effect of this provision was to change the rule established under the act of 1848, that when the homestead of an insolvent estate was set apart to the surviving widow and minor children, they took an absolute title to it to the exclusion of other heirs, and to provide that in such case the title to property should vest in the heirs according to law; but the widow and minor children should have the right to use it as a homestead under the limitations expressed in the Constitution.

Article 2055 of the Revised Statutes reads thus: "Should the estate, upon final settlement, prove to be insolvent, the title of the widow and children to all the property and allowances set apart or paid to them, under the provisions of this and of the preceding chapter, shall be absolute, and shall not be taken for any of the debts of the estate except as hereinafter provided." That portion of this article which gives to the widow and minor children absolute title to the homestead in case the estate be insolvent, is in conflict with section 52, article 16, of the Constitution, and, to that extent, is void as to the other heirs; and we must read the article of the statute without that provision in order to determine the rights of such parties to the homestead.

Considering section 52, article 16, of the Constitution, as interpreted by this court in Givens v. Hudson and Zwernemann v. Von Rosenberg, in connection with articles 2046 and 2055, Revised Statutes, the law may be concisely stated thus: Upon the death of one who was the head of a family, leaving a widow and minor children or either, it is made the duty of the County Court to set aside the homestead and other exempted property to such widow and minor children, who would be entitled to the use of the homestead under the limitations of section 52, article 16, of the Constitution, but the title to the property would vest in all of the heirs, not, however, subject to the debts of the deceased, because, being set apart by the court, it is withdrawn from the administration of his estate and would not afterwards become subject to the payment of debts if not used as a homestead, because the exemption by law attaches after death in favor of the persons named.

There is no provision of the law that authorizes a court to set apart exempt property of an estate to the surviving constituents of every family to which it may have been exempted. The constituents of a

family who are entitled to the homestead and other exempted property, upon the death of the head, are named in the law and the Constitution. The mother of the deceased is not named and Mrs. Putman had no homestead right in the property.

Under the will of J. A. B. Putman, the defendants in error did not take the property free from his debts. Howard v. Marshall, 48 Texas, 480. In the case cited, the judgment was reversed because the facts did not show that the deceased had a family and was entitled to the exemption of homestead, but, in remanding the case, this court, by way of instruction, held that if deceased had a homestead exempted by law, he could not dispose of it by will so as to defeat the claims of creditors. It is well established that a creditor's claim for payment out of the estate of a decedent is superior to the rights of heirs, legatees, and devisees. The exemption of property from forced sale can not be transmitted by descent nor transferred by will.

It was suggested in argument that Putman could have given the property to the defendants in error in his lifetime and might have made the conveyance take effect after his death, and that the donee would have taken it free from creditor's claims, from which it is argued that he could give it by will. It is true that an estate may be made to commence in the future by deed, but the deed must vest the right *at the present* or it will be construed to be a will. Griffis v. Payne, 92 Texas, 293. The superior right of the creditor, under the law, attached, upon the death of the debtor, in preference to the right claimed under the will.

It is ordered that the judgments of the District Court and Court of Civil Appeals be reversed and that the cause be remanded to the District Court, to be disposed of according to this opinion.

*Reversed and remanded.*