## AMERICAN BONDING CO. OF BALTIMORE v. LOGAN. (No. 6488.)

(Court of Civil Appeals of Texas. Dallas. Dec. 23, 1911. Dissenting Opinion, Dec. 30, 1911. On Motion for Rehearing, June 6, 1914.)

1. HOMESTEAD (§ 146*)—RIGHT OF HEIRS—EXEMPTION.

Under Sayles' Ann. Civ. St. 1897, arts. 1869, 2055, 2060, 2061, providing that, on the death of a person intestate, his estate shall vest immediately in his heirs, that on the insolvency of the estate on final settlement, title of the widow and children to their exemptions shall be absolute, that the homestead shall not be liable for the payment of debts, and that it shall be exempt from forced sale for the payment of such debts, the subsequent sale of the homestead by the members of the family residing thereon and entitled thereto does not render the amount received by them from such sale liable for the debts of an insolvent decedent, and the amount received from such sale by an unmarried daughter cannot be set off by the surety upon a bond given by the decedent as guardian of the daughter, against its liability for sums received by the guardian, but not accounted for.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 257; Dec. Dig. § 146.*]

2. HOMESTEAD (§ 150*)—RIGHTS OF HEIRS—NECESSITY FOR ALLOTMENT.

Where the homestead is clearly defined so that its identity can be determined, the actual setting apart of the homestead of an insolvent decedent by the probate court under Sayles' Ann. Civ. St. 1897, art. 2046, is not essential to the vesting of the title thereto in the heirs.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 294–305; Dec. Dig. § 150.*]

Bookhout, J., dissenting.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by Jessie Logan against the American Bonding Company of Baltimore. Judgment for the plaintiff, and defendant appeals. Affirmed, and motion for rehearing overruled.

For opinion of Supreme Court answering certified question, see 166 S. W. 1132.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Meador, Davis & Senter, of Dallas, for appellant. Wood & Wood, of Dallas, for appellee.

TALBOT, J. This suit was instituted by Jessie Logan, a feme sole, on June 3, 1910, against the American Bonding Company of Baltimore, to recover the sum of $1,000, with interest and costs of suit. The basis of the suit is that the said company was surety on the bond of W. J. Logan, as guardian of the plaintiff, Jessie Logan; that after the execution of said bond, the said guardian, as such, collected the sum of $1,000 belonging to his ward, Jessie Logan, and died May 3, 1908, without having turned over said sum to her, and without having accounted to her in any way for the same or any part thereof; that by reason of the premises the said surety, American Bonding Company, became liable to plaintiff for said sum of money, with interest. The defendant pleaded a general denial, and specially that W. J. Logan, plaintiff's father and guardian, owned and occupied certain real estate situated in the city of Dallas, as a homestead; that after his death, and under and by agreement of his surviving widow and children, said property was sold, and from the sale of the same the plaintiff, Jessie Logan, received December 1, 1909, sums of money aggregating $2,124.50; that defendant being surety on the bond of W. J. Logan, as guardian of Jessie Logan, and, W. J. Logan being dead, it was entitled to an offset against its liability on said bond to the extent of the amount received by Jessie Logan, from the estate of her guardian. The prayer of the answer was that, in the event the court should conclude plaintiff was entitled to judgment against defendant for any amount, such amount be credited with whatever amount plaintiff received from the estate of her said father and guardian. The case was tried by the court without the intervention of a jury on the following agreed statement of facts:

"W. J. Logan was, during the year 1900, and for many years prior thereto, a married man, and resided in Dallas county, Tex., and in the city of Dallas. Said W. J. Logan died in the city of Dallas on May 3, A. D. 1908. He was married twice. His first wife died during the first part of the year 1900 in the city of Dallas. He had two children only by his first wife, to wit, Jessie Logan, the plaintiff in this suit, and John Logan, a male. At the time the wife died, Jessie, a girl, was about 15 years old, and John was about 13 years old. At the time of the death of the said mother of Jessie and John Logan, she left to her two said children two insurance policies on her life, each for the sum of $1,000. Each of these policies was payable jointly to the said children. After the death of the mother of Jessie and John, their father, W. J. Logan, was shortly thereafter, and during the year 1900, on his application, appointed guardian of the estate of said two children by the county probate court of Dallas county, Tex., and on the 13th day of November, A. D. 1900, took the requisite guardian's oath, and entered into bond, as required by law, with the defendant, the American Bonding Company of Baltimore, a corporation, as surety; said bond was made payable to the

county judge of Dallas county, was in the sum of $4,000, and was conditioned as required by law in such cases, and duly and legally approved by the then acting county judge of Dallas county, and filed with the clerk of said probate court. The said W. J. Logan continued as the guardian of the estate of Jessie and John until the death of said W. J. Logan, which was on May 3, 1908. On the 12th day of December, A. D. 1900, W. J. Logan, as guardian of said children, collected one of the said insurance policies, which was $1,000. On the 7th of February, A. D. 1901, said W. J. Logan collected the other policy, which was $1,000. One-half of the $2,000 collected on the policies belonged to Jessie Logan. The said W. J. Logan never at any time accounted to the probate court, or to Jessie Logan, for said $1,000 belonging to her, or any part thereof. The guardianship was pending and unsettled at the time of the death of said W. J. Logan on May 3, A. D. 1908. The said W. J. Logan by the exercise of the proper care could have loaned said $1,000 and kept it loaned at the rate of 8 per cent. per annum from January 1, A. D. 1902, until his death. The said Jessie Logan arrived at the age of 21 years during the latter part of the year 1906. She has never been married. The said Jessie Logan never received said $1,000, or any part thereof, from her father, unless it be as hereinafter stated. The said W. J. Logan married the second time during the year 1905; his second wife, Mrs. Jennie Logan, is still living. The said W. J. Logan and his said second wife, during their marriage, adopted, according to the statutes of Texas, as a legal heir, one Dorothy Logan, a girl who was a minor at the time she was so adopted, and who is now a minor. At the time of the death of said W. J. Logan, his family consisted of himself, his said wife, Jennie, his daughter, Jessie, an unmarried daughter, John Logan, a boy, and Dorothy Logan, the adopted daughter. Soon after the death of W. J. Logan, and during the year 1908, R. H. Lee was, by the county probate court of Dallas county, Tex., appointed administrator of the estate of said W. J. Logan, and he thereafter within due time qualified and gave bond as such administrator. The said W. J. Logan owed debts at the time of his death, and his estate was insolvent, and so adjudged by the probate court, and so recognized throughout the administration proceedings, but the value of the homestead exceeded the debts of the said W. J. Logan. The said W. J. Logan never after the said Jessie Logan arrived at the age of 21 years filed any account for final settlement of the guardianship matter, nor was the guardianship ever closed or settled during the lifetime of said W. J. Logan. No part of the $1,000 collected by the said W. J. Logan for plaintiff ever came into the possession of the said R. H. Lee, as administrator of the estate of W. J. Logan. The only property that came into the possession of R. H. Lee, as administrator of the estate of W. J. Logan, was the homestead of W. J. Logan, and his family, and which was occupied by said W. J. Logan and his said family at the time of his death, and which has been occupied by his said family since the time of the death of the said W. J. Logan up to the time it was sold. The same is situated in the city of Dallas, and consists of adjoining lots, and was the resident homestead of said W. J. Logan and family at the time of his death. It was recognized by said administrator and by said probate court as the homestead of the family of W. J. Logan, and exempt from the payment of the debts of said W. J. Logan, because of its homestead character, except as to taxes; but it is not agreed that the interest that plaintiff, Jessie Logan, had in said homestead by inheritance from her father, W. J. Logan, or the proceeds that she received from a sale of said homestead, cannot be set off

against the claim sued on in this case; that is a question of law we refer to the court for settlement. The said homestead was sold in December, 1909, for the sum of $10,500, and it was in fact worth that sum when sold, and was worth about $8,000 when W. J. Logan died; the administrator, Mrs. Jennie Logan, Mrs. Jennie Logan as guardian for Dorothy Logan, a minor, John Logan, and Jessie Logan joining in the deed of conveyance. The said Jessie Logan received about $2,100 in December, 1909, of the purchase money. Upon this state of facts the court concluded that the plaintiff, Jessie Logan, was entitled to recover of the defendant the sum of $1,000, with interest thereon at the rate of 10 per cent. per annum from the 1st day of January, A. D. 1902, until the 3d day of May, 1908, and 6 per cent. per annum from May 3, 1908; that plaintiff received out of the proceeds of the sale of the homestead in December, 1909, $2,100, but that the same was not a lawful offset against the amount plaintiff was entitled to recover, because the estate of W. J. Logan at the time of his death was insolvent, and plaintiff, being an unmarried daughter and constituent member of the family, residing on said homestead up to the date of the sale of the same, took the amount received by her free from the debts of her father."

The correctness of the court's conclusion of law is challenged by the appellant's assignments of error, and the principal propositions urged in opposition thereto are, in effect:

"(1) Where it appears, under an agreed statement of facts, that the plaintiff, a surviving daughter and a former ward of a deceased guardian, received the sum of $2,100 from the estate of said deceased guardian and father, and said ward sues the surety of said deceased guardian and father, and obtains judgment for the sum of $1,808 against said surety, the surety is entitled to set off said $2,100 received from the estate of her deceased father and guardian. (2) An adult unmarried daughter, with other members of the family of a deceased guardian, said guardian being the father of the adult unmarried daughter, waives her homestead rights in the homestead of the family by the sale thereof and the distribution of the proceeds among the members of the family, and when she receives her pro rata part of the proceeds, she must credit the amount received on any claim she may have against the surety or estate of her deceased guardian and father."

[1] We are of the opinion the court did not err in holding, under the facts of this case, that the defendant was not entitled to offset its liability on the guardian's bond with any portion of the amount received by the plaintiff from her father's estate. It is true W. J. Logan was primarily liable on the bond executed by him as the guardian of plaintiff, and that upon his death his estate became so liable, but, his estate being insolvent, his surviving widow and children, constituents of the family, took an absolute title to the homestead in question free of the claims of creditors of the estate. This exemption under the statutes and decisions of this state— "was a continuing and permanent one, and adhered to the land, not merely to the homestead right in the land." Sayles' Statutes, arts. 1869, 2055, 2060, 2061; Scott v. Cunningham, 60 Tex. 566; Reeves v. Petty, 44 Tex. 249; Zwernemann v. Von Rosenberg, 76 Tex. 522, 13 S. W. 485; Childers v. Henderson & Co., 76 Tex. 664, 13 S. W. 481; Lacy v. Lockett, 82 Tex. 190, 17 S. W. 916; Cameron v. Morris, 83 Tex. 14, 18 S. W. 422; Roots v. Robertson, 93 Tex. 365, 55 S. W. 308; Ford v. Sims, 93 Tex. 586, 57 S. W. 20; Krueger v. Wolf, 12 Tex. Civ. App. 167, 33 S. W. 663.

[2] The actual setting apart of said homestead by the county court to W. J. Logan's surviving widow, minor child, and unmarried daughter, Jessie Logan, as directed by article 2046 of the statute, was not essential to the vesting of such title. The homestead being clearly defined and distinct from every other article of property which is exempt from forced sale, it— "requires no act of specification to fix its identity, and therefore vests with or without administration, and whether it be or be not set apart." Sossaman v. Powell, 21 Tex. 664; Griffie v. Maxey, 58 Tex. 210.

The property in question being homestead, the right of those who are authorized to claim its exemption does not depend upon the action of the probate court. The plaintiff, Jessie Logan, was an unmarried daughter of W. J. Logan, a constituent of his family, residing on the property involved in this suit as her home at the time of his death, and she continued to reside thereon with her stepmother and other members of the family until the place was sold in December, 1909. Therefore the interest she inherited in this property did not descend charged with the payment of her father's debts, nor do we think the proceeds arising from the voluntary sale, made in December, 1909, of her interest therein is chargeable therewith. In Zwernemann v. Von Rosenberg, supra, our Supreme Court, in construing article 16, § 52, of the Constitution, said:

"The language, 'shall descend and vest as other property of the deceased,' was employed, we think, to determine the person who should take and their respective interests, but not the conditions which were to be imposed upon the inheritance."

The court in that case further said:

"It is clear that if property is not subject to sale by order of the probate court for the payment of debts, the heirs who have received the property. there being no administration, cannot be charged with its value at the suit of the creditor."

Again, in Roots v. Robertson, 93 Tex. 365, 55 S. W. 308, cited above, it is said:

"Considering section 52, article 16, of the Constitution, as interpreted by this court in Givens v. Hudson and Zwernemann v. Von Rosenberg, in connection with articles 2046 and 2055, Revised Statutes, the law may be concisely stated thus: Upon the death of one who was the head of a family, leaving a widow and minor children or either, it is made the duty of the county court to set aside the homestead and other exempted property to such widow and minor children, who would be entitled to the use of the homestead under the limitations of section 52, article 16, of the Constitution, but the title to the property would vest in all of the heirs, not, however, subject to the debts of the deceased, being set apart by the court, it is withdrawn from the administration of his estate, and would not afterwards become subject to the payment of debts if not used as a homestead, because the exemption by law attaches after death in favor of the persons named."

Thus, it would seem that, inasmuch as the effect of our statutes is to withdraw the homestead under the conditions referred to by the Supreme Court from administration, it would not thereafter become subject to the payment of debts, even if not used as a homestead, "because the exemption by law attaches after death in favor of the persons who are authorized to claim the homestead exemption." Plainly, the doctrine of the cases cited, as stated in Cameron v. Morris, supra, is, that if the homestead is protected from the payment of debts because of the survivorship of a constituent of the family, it is, in insolvent estates, unconditionally, and unalterably so protected, and can never be taken for any of the debts of the ancestor, except for purchase money, taxes, etc., due thereon. The homestead itself being thus protected, it logically follows, we think, that the proceeds arising from its sale are not subject to the payment of debts. It would certainly be anomalous to hold that, notwithstanding one who was authorized to claim the homestead exemption inherited the property absolutely and free from the claims of creditors, yet the proceeds arising from a voluntary sale of it would instantly, upon the consummation of such a sale, become subject to the payment of such claims.

If the views expressed in this opinion are in conflict with our holding in the case of American Bonding Co. v. Logan, 132 S. W. 894, then we are unwilling to adhere to that decision for the reason that a more careful investigation of the question has convinced a majority of the court that it is not in harmony with the decisions of the Supreme Court of this state upon the subject.

The judgment of the court below is affirmed.

BOOKHOUT, J. (dissenting). I regret that I am compelled to dissent in this case from the conclusions of my Brothers.

The question raised by this appeal for our determination may be stated thus: Is the American Bonding Company surety on the bond of W. J. Logan, guardian of the estate of his daughter, Jessie Logan, in a suit by her on the bond for her father's defalcation while acting as such guardian, entitled to offset its liability on the bond by the amount inherited by her as an heir of her father's estate? The amount for which her father failed to account while acting as guardian, and for which the bondsmen are liable, was $1,000 and interest, aggregating at the time of trial $1,808. The amount inherited by Jessie Logan from her father's estate was $2,100. In the opinion of the majority it is said:

"We are of the opinion the court did not err in holding, under the facts of this case, that the defendant, was not entitled to offset its liability on the guardian's bond with any portion of the amount received by the plaintiff from her father's estate. It is true W. J. Logan was primarily liable on the bond executed by him

as the guardian of plaintiff, and that upon his death his estate became so liable, but, his estate being insolvent, his surviving widow and children, constituents of the family, took an absolute title to the homestead in question free of the claims of creditors of the estate. This exemption under the statutes and decisions of this state 'was a continuing and permanent one, and adhered to the land not merely to the homestead right in the land.'"

Again:

"The property in question being homestead, the right of those who are authorized to claim its exemption does not depend upon the action of the probate court. The plaintiff, Jessie Logan, was an unmarried daughter of W. J. Logan, a constituent of his family residing on the property involved in this suit as her home at the time of his death, and she continued to reside thereon with her stepmother and other members of the family until the place was sold in December, 1909. Therefore the interest she inherited in this property did not descend charged with the payment of her father's debts, nor do we think the proceeds arising from the voluntary sale, made in December, 1909, of her interest therein is chargeable therewith."

I do not concur in these conclusions. By statute the homestead is exempted to the *family*, and does not as such descend to the constituent members of the family. Jessie Logan had no interest in the homestead as such as against her father. She inherited an interest therein the same as she inherited an interest in his other property, whether the estate was solvent or insolvent. Givens v. Hudson, 64 Tex. 471; Roots v. Robertson, Administrator, 93 Tex. 365, 55 S. W. 308.

In the case last cited Mr. Justice Brown, in discussing section 50, article 16 of the Constitution exempting the homestead from forced sale, speaking for the court, states the law thus:

"The exemption expressed in section 50 applies to property while the head of the family is living, but furnishes no rule for its disposition after his death. Givens v. Hudson, 64 Tex. 473; Zwernemann v. Von Rosenberg, 76 Tex. 525 [13 S. W. 485]. In the last-named case, Judge Gaines, speaking for the court, said: 'In the previous Constitution of the state, the disposition of the homestead after the death of the owner was left wholly to the wisdom of the Legislature. It is so, also, in the present Constitution, except as to the manner of its descent and the use reserved to the surviving spouse and the minor children.' It has been frequently and uniformly held in this state that the homestead exemption does not descend to heirs, but they take the property, under the statute and the Constitution, exempted from the debts of the ancestor, not because it was exempted in his hands, but because they come within the class of persons named in the Constitution and the law. In the case of Givens v. Hudson, cited above, Judge Stayton said: 'The thing is not exempted to the child or widow because it was exempted to the father or husband, who was the head of the family, but because the child or widow was and remained a constituent of the family.'"

In my opinion the bonding company, surety on the guardian's bond, was equitably entitled to offset its liability on the bond of W. J. Logan, guardian of the estate of Jessie Logan, with the amount she inherited as an heir of her father's estate. This court so held on the same state of facts here shown

in the case of American Bonding Company v. Logan, 132 S. W. 897. John Logan, the appellee in that case, is a brother of Jessie Logan, appellee here. The attorneys for John Logan were the same as here appear for Jessie Logan, and it is noticeable that no application for writ of error was made from the court's holding in that case. The opinion of the majority is based on the fact that the estate of W. J. Logan owed more debts at the time of his death, May 3, 1908, than the value of the estate, and was therefore insolvent, and that it continued after his death to be insolvent and occupied by his second wife and children, including appellee, until its sale by them in December, 1909. During the year 1909, R. H. Lee was appointed and qualified as administrator of the estate of W. J. Logan, but, pending administration, no order was made setting aside the homestead to the family and withdrawing it from administration. In the statement of facts as set out in the majority opinion it is said the "estate was insolvent and was so adjudged by the probate court, and so recognized throughout the administration proceedings." This must be understood to mean that, the estate being insolvent and the homestead occupied by the family, the administrator did not attempt to sell it. It is conceded the probate court did not make any order setting aside the homestead to the family.

We have not been cited to any opinion by the Supreme Court where the precise question here raised was passed upon by that court. But the principle here contended for by the bonding company was recognized and sustained by the Supreme Court in the cases of Ashe v. Yungst, 65 Tex. 631, and Martin v. McAllister, 94 Tex. 567, 63 S. W. 624, 56 L. R. A. 585.

In the case of Ashe v. Yungst, first above cited, the facts were that Herman Yungst and his wife resided on the property in controversy; it being community and their homestead. Mrs. Yungst died in December, 1882, leaving minor children, and the property continued to be the homestead of Yungst and his wife until after the wife's death. Yungst, at the time of his wife's death, was indebted in a sum equal to the value of the property. It was assumed in the opinion that the community estate of Herman Yungst and wife was insolvent at the time of her death; that it was indebted in a sum equal to the value of the property in controversy; that the property was their homestead; and that the appellees in the case were their minor children. The question in the case was: Did Yungst have power to convey the property in September, 1884, to pay off community debts? The court on these facts held that children have no interest in the homestead as such, as against the surviving parent by virtue of the homestead rights of such deceased parent, but they take title to such property just the same as they would to

other real property, and that there is no distinction between adult and minor heirs. The sale of the homestead by the husband to pay off community debts was sustained. The opinion contains an exhaustive discussion of the rights the children inherit in an insolvent homestead of their parents, and in my opinion is decisive of the question raised on this appeal.

In the case last cited Cornelia Martin, wife of Thomas P. Martin, died in March, 1896, leaving surviving her husband, Thomas P. Martin, and six children, two of the children being at the time minors. Before and at the time of his wife's death, Thomas P. Martin owned and occupied a home in the city of Ft. Worth upon which he and the two minor children lived until shortly before the trial of the case, but at the time of trial the children had gone from the home and lived with their sisters. Mrs. Martin died intestate, and no administration was ever had on her estate, nor did the husband qualify as community survivor. Of the property which belonged to the community, there remains in the hands of the surviving husband personal property of the value of $575, and the homestead, which is worth $4,000, aggregating the sum of $4,575. At the date of Mrs. Martin's death there existed debts against the community amounting to $8,840. Thomas P. Martin applied $5,667.38 of his individual funds to the payment of community debts. Martin claimed the right to retain the community property which remained in his hands to reimburse him for his separate funds used in the payment of community debts, and the question before the Supreme Court was: Did he have the right to be reimbursed for his expenditures in the payment of the community debts out of the homestead and other property exempted from forced sale? It was contended by the children, the defendants in error in the case, that Thomas P. Martin cannot be remunerated out of the community property on hand, because it consists of the homestead and other exempt property which could not be made liable for the debts of the creditor. In the opinion of the court, delivered by Judge Brown, it was said:

"The exemption of the homestead and other property was in favor of the father, the head of the family, and did not inure to the benefit of the children upon the death of their mother. Ashe v. Yungst, 65 Tex. 631. Although the plaintiff in error could not have been compelled to yield up his homestead to pay the community debts, yet he had the authority as surviving husband to waive his exemption and sell the homestead, applying the proceeds to the payment of the community debts. Wilson v. Helms, 59 Tex. 680; Fagan v. McWhirter, 71 Tex. 567 [9 S. W. 677]. If the surviving husband had the power to sell the homestead and apply the proceeds to the payment of the community debts, we think that it logically follows that he also had the power to sell that property, and, out of the proceeds, to reimburse himself for the amount paid out of the separate funds."

It follows from these remarks that, in the opinion of the writer, the proposition of appellant, under the first assignment of error, that:

"Where it appears, under an agreed statement of facts, that the plaintiff, a surviving daughter and a former ward of a deceased guardian, received the sum of $2,100 from the estate of said deceased guardian and father, and said ward sues the surety of said deceased guardian and father, and obtains judgment for the sum of $1,808 against said surety, the surety is entitled to set off said $1,808 by the $2,100 received from the estate of her deceased father and guardian"

—is sound, and that the first assignment under which the proposition properly arises should be sustained.

### On Motion for Rehearing.

TALBOT, J. Upon the filing of appellant's motion for a rehearing in this case, Mr. Justice BOOKHOUT having dissented from the opinion of the majority, we certified the question involved to the Supreme Court for adjudication. The decision of that court, not yet officially published, 166 S. W. 1132, is in accord with the decision of the majority of this court. Appellant's motion for rehearing is therefore overruled.