## Boggess, et al. v. Johnston, et al.

(Decied April 17, 1914.)

### Appeal from Muhlenberg Circuit Court.

Homestead—Rights of Surviving Wife—Termination by Marriage. —Under Section 1707, Kentucky Statutes, providing that the homestead shall be for the use of the widow "so long as she occupies the same," and that the unmarried infant children of the husband shall be entitled to a joint occupancy with the widow until the

youngest child arrives at full age; the widow's homestead right terminates on her re-marriage after her husband's death, and permanent removal from the home of her deceased husband to the home of her new husband, although she continues to hold the home of her deceased husband by tenant.

NEWTON BELCHER and WILLIS & MEREDITH for appellant.

S. C. EAVES for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Alonzo Johnston, a resident of Muhlenberg County, died in the year 1904, survived by his wife Alma Johnston and the following adult children: J. H. Johnston, Annie Johnston, who intermarried with J. L. Jenkins, Alice Johnston, who intermarried with J. P. Powell, and Della Johnston, who intermarried with Joseph Hall. At the time of his death Alonzo Johnston owned and was in the possession of two small adjoining tracts of land upon which he resided, the value of the whole not exceeding $1,000.00; and at his death the lands descended under the statute to his four children equally, subject to the homestead or dower right of the widow. From the time of the decedent's death down to September 12, 1912, the widow, Alma Johnston, occupied the two tracts of land in question as a homestead, but on that date she married one F. Y. Boggess and then removed from these lands to the farm and residence of her husband, F. Y. Boggess.

On November 8, 1912, J. H. Johnston and Tinnie Johnston, his wife, Annie Jenkins and J. L. Jenkins, her husband, Alice Powell and J. P. Powell, her husband, brought this action under Section 490, Civil Code in the Muhlenberg Circuit Court against their mother, Alma Johnston Boggess, her husband, F. Y. Boggess, their sister, Della Hall and her husband, Joseph Hall, asking a sale of the two tracts of land left by their father, Alonzo Johnston, and a division of the proceeds among the heirs at law, after payment to the widow of the value of her dower interest in the land. In addition to the grounds authorizing such a sale of land contained in Section 490, Civil Code, the petition alleged that upon the marriage of the defendant Alma Johnston Boggess with her co-defendant, F. Y. Boggess, "she moved to the residence of said F. Y. Boggess and abandoned the two tracts of land above described as a homestead and has not since said time resided on or occupied said land;" and that "the defendant F. Y. Boggess is the owner of a great amount of

land in Muhlenberg County, Kentucky; that by reason of the marriage of the defendant, Alma Johnston Boggess, to him she has an inchoate right of dower in all of the land owned by him, which aggregates probably as many as 1,500 acres.''

Alma Johnston Boggess and her husband, F. Y. Boggess, by joint and separate answer to the petition denied the former's abandonment of a homestead in the land left by her first husband, Alonzo Johnston, but admitted her removal therefrom to the home of F. Y. Boggess at the time of her marriage with him, alleging, however, that such removal was only temporary. The affirmative matter of the answer was controverted by reply. Following the taking of depositions by the parties and a submission of the case the circuit court rendered judgment declaring Alma Johnston Boggess not entitled to homestead in the lands left by Alonzo Johnston, deceased, but that she was entitled to dower therein; fixed the value of such dower to be paid out of the proceeds of the lands, and directed that they be sold for that purpose and for a distribution of the remaining proceeds equally among the heirs at law of Alonzo Johnston, deceased, Alma Johnston Boggess and F. Y. Boggess, being dissatisfied with the judgment, have appealed.

The question presented for decision upon the appeal is, did the marriage of the widow and her removal to the abode of her present husband constitute an abandonment of her homestead in the lands left by her first husband? The right of homestead is conferred by Section 1707, Kentucky Statutes, which provides:

''The homestead shall be for the use of the widow so long as she occupies the same, and the unmarried infant children of the husband shall be entitled to a joint occupancy with her until the youngest unmarried child arrives at full age. But the termination of the widow's occupancy shall not affect the right of the children; but said land may be sold subject to the right of said widow and children, if a sale is nceessary to pay the debts of the husband.''

The following facts clearly appear from the record, indeed, are admitted by the appellants, namely: First, that on the day of her marriage to F. Y. Boggess the appellant Alma Johnston Boggess removed to his farm and residence without any expression of intention to return to or reside upon the land left by her first husband, Alonzo Johnston. Second, that she continued to reside

with the present husband on his farm and at his home until April 15, 1913, about five months after the institution of this action by the appellees, when they returned to her former home where they have since resided. Third, that the appellant, F. Y. Boggess, is the owner in his own right of about 1,500 acres of land, upon which he had a residence for more than twenty years prior to his marriage with the appellant Alma Johnston Boggess, and to which she removed with him upon their marriage. We are of opinion that the foregoing facts manifest an abandonment by the appellant, Alma Johnston Boggess, of her homestead in the land left by her first husband, Alonzo Johnston. The residence of the husband is in law, presumptively, the residence of the wife, and where it is made to appear, as in this case, that the husband is the owner of real estate upon which he has a residence and the wife following their marriage takes up her residence with him at his home upon his land, in the absence of evidence tending to show a contrary intention, the law will regard it as her permanent home as well as that of her husband. The homestead of the appellant, Alma Johnston Boggess, in the land left by her first husband existed and continued *only so long as she occupied the same,* and when she ceased to occupy it by removing to and residing in the home of the second husband, it became lost to her.

The cases of Phipps v. Acton, 12 Bush, 375, and of Taree v. Spriggs, 149 Ky., 20, relied on by appellants, do not sustain their contention. In the first it was held that a widow's temporary absence from the homestead set apart in her deceased husband's lands, after having rented same out and placed her tenant in possession, was not such an abandonment as would forfeit her claim to the homestead under the statute; for so long as the widow remained in possession of the premises by herself, her agent, or her tenant, her right to the homestead continued. Moreover, there was no second marriage of the widow in that case.

In the second case referred to there was a second marriage of the widow but no abandonment by her of the homestead. In the opinion, the court, after reviewing a number of cases in which it was held that there had been an abandonment of the homestead by the wife, said:

"It will be observed that in all these cases, in which it was held that there had been an abandonment of the homestead, the decisions are made to rest upon the ground

that such abandonment resulted from a cessation of the use of the homestead as such and the taking up of a permanent abode or residence elsewhere; these facts being clearly made to appear from the evidence. No such facts are presented in the instant case. On the contrary, the evidence is substantially all to the effect that appellant never had any intention of abandoning the homestead; that there had been no cessation of its use by her; and that she has never permanently taken up her residence elsewhere. Her present husband had no permanent home of his own, in Illinois or elsewhere, for her to remove to, and her stay with him in Illinois was but temporary. That is shown by the fact that whenever she left her home to go to him, her furniture and other personal effects were invariably left in the house and the house and lot in charge of a tenant. In other words, appellant has in person, or by her tenants, continued in the actual, adverse possession of the property uninterruptedly, claiming it as a homestead from the death of her first husband, down to the time it was forcibly entered by appellee and her household effects removed therefrom by him and destroyed. Since which time she has lived in a rented house in the vicinity of the homestead awaiting a decision of the court in this case. We think this case clearly akin to and controlled by Phipps, etc. v. Acton, etc.; Young v. Milward and Young v. Young, supra; therefore, appellant should have been adjudged the house and lot in controversy as a homestead."

In the case before us the facts are wholly different. The second husband owned real estate and a home to which the wife was carried when he married her. There was no avowal or act upon the part of husband or wife that amounted to an expression of an intention or purpose on their part to subsequently return to and live upon the former homestead of the wife. There was no antenuptial contract between the parties whereby the wife was divested of the inchoate right of dower or homestead in the lands of the husband, therefore, the marriage invested her with such right. She could not, in the event of the death of her present husband, obtain a homestead in his lands and still hold the homestead in the land left by her first husband.

In thus viewing the case we do not overlook the return of the appellants to the land formerly held by the wife as a homestead. It is, however, evident from the facts appearing in the record that appellant's return to

the former home of the wife, made as it was after this suit had been brought by appellees to obtain a sale of the land, was an afterthought, intended to strengthen the defense interposed by their answer that her removal therefrom to the home of her present husband following their marriage, was but temporary. Such return to the former homestead, in view of the legal effect of the marriage and the circumstances attending the immediate removal of the parties to the land owned by the second husband and their continued residence thereon down to the time of such return, are not sufficient to remove from our minds the conclusion that the marriage and change of residence of the wife to that of the present husband was intended to be and was permanent, and, therefore, constituted an abandonment of her homestead in the land of the first husband. It also appears from the evidence that the appellant, F. Y. Boggess, even before the institution of this action, was endeavoring to purchase at a nominal consideration from appellees, or some of them, their interests in the land in controversy, and the return of himself and wife to the land may have been and doubtless was resorted to as a means of coercing the sale to him by appellees of their interests in the land. At any rate the record furnishes some evidence of such a motive on his part.

We think the case of Bloch v. Tarrant's Admr., et al., 122 Ky., 138, conclusive of this one. In that case the deceased husband, Tarrant, left unpaid debts and a farm of the value of $1,000.00, which his widow occupied after his death with her two infant children as a homestead. Later she married John Butts, who lived on a farm of his own seven miles from the land left by her first husband. Upon her marriage to Butts she removed with her two children to his home, where they remained. Several years after her second marriage, Bloch, a creditor of the first husband, brought suit to subject the land left by him to the payment of his debts, alleging that Mrs. Butts, by her marriage to her last husband and removal to his home, had abandoned her homestead in the land left by her first husband, but conceding that each of the children was entitled to a homestead until arrival at twenty-one years of age. The circuit court dismissed Bloch's petition, but this court reversed the judgment, holding that the land should be sold to pay his debt, subject to the children's right of homestead. In the opinion it is, in part, said:

"The limitation of the widow's right to the use of the homestead so long as she occupies it, is a vital part of our statute. The Legislature in so limiting her right did not intend to give her a life estate and reasonable effect must be given to the words, 'so long as she occupies the same.' Were we to hold otherwise, the widow might make her permanent home in a distant State, on land of her own, or her second husband, and still hold the homestead against the husband's creditors or his heirs. The purpose of the statute is to secure the widow in a home so long as she desires to occupy it. John Butts is entitled to a homestead because he and his wife are living on the land which he owns and it is their home. If he should die, Mrs. Butts would be entitled to a homestead in the land, but she would not be entitled to hold this homestead in addition to the homestead in the land of the first husband. If she could, the law, which was intended to secure a home and only one home to this class of persons might in some cases exempt for their benefit a number of homes, and she who had several husbands, or he who had a number of wives, might live elsewhere, and have a comfortable income from lands here and there, and all held as homesteads."

The judgment of the circuit court being in accordance with the conclusion we have reached, it is hereby affirmed.