W. D. GAINES, GUARDIAN, v. D. Y. GAINES ET AL.

No. 299.

**1. Abandonment of Homestead.**—A widow may abandon her rights in the homestead of her deceased husband. See facts evidencing such abandonment.

**2. Minor's Right to Homestead.** — To entitle a minor to the exclusive use of the homestead, against partition, it is necessary that the Probate Court by order designate such use by the minor or guardian. It is not sufficient that the court receive and approve the guardian's account for rent of such homestead.

**3. Descent of Homestead.**—The father died insolvent March, 1876, leaving widow and four children, three of them by a former marriage. Under the laws of descent the homestead was cast upon the widow and children. In this case, each taking one-fifth. Upon death of the widow, her child, being her only heir, took her share, and thus became owner of two-fifths interest in the homestead.

APPEAL from Falls. Tried below before Hon. J. D. OLTORF, Special District Judge.

*R. B. Clarkson*, for appellant, cited, Davis v. McCartney, 64 Texas, 585; McCamant v. Roberts, 66 Texas, 261; Zwernemann v. Von Rosenberg, 76 Texas, 522; Foreman v. Meroney, 62 Texas, 723; Hamblin v. Warnecke, 31 Texas, 91.

*B. H. Rice* and *S. R. Scott*, for appellees.

FISHER, CHIEF JUSTICE.—This was a suit for partition of 125 acres of land, brought by the appellees, D. Y. Gaines, Lillian Degraffinreidt, joined by her husband F. T. Degraffinreidt, and Helen Hatch, joined by her husband Dill Hatch, against Bettie Gaines and W. D. Gaines, the guardian of her estate.

The judgment of the court below decreed to D. Y. Gaines, Helen Hatch, Lillian Degraffinreidt, and the defendant Bettie Gaines, each an undivided one-fourth interest in the land in controversy.

The plaintiffs D. Y. Gaines, Lillian Degraffinreidt, and Helen Hatch and defendant Bettie Gaines are the children of D. Y. Gaines, Sr., who died in March, 1876, and all said children were minors at the time of his death. The first three named are the children of a former marriage; the defendant Bettie Gaines is a child of a second marriage of D. Y. Gaines.

D. Y. Gaines, Sr., at the death of his first wife, occupied and owned as the community homestead of himself and wife 250 acres of land, of which the 125 acres in controversy are a part. After the death of his first wife, he married Lina, the mother of the defendant Bettie, and they, with his children of the first marriage, continued to occupy his 250 acres homestead, and were so occupying it when he died. After his death the land was divided, and the children by his first marriage were given 125 acres

of the land as their mother's community interest, and the remaining 125 acres, the land in suit, was set aside to the widow and the children as a homestead. Not long after the death of her husband, Mrs. Lina Gaines left the land and removed to another county, where she continued to reside until her death, in 1883. The conclusion is warranted that Mrs. Lina Gaines at her death was insolvent.

At the time of the death of D. Y. Gaines all of the plaintiffs and the defendant Bettie were minors, aged respectively 16, 14, and 10 years, and Bettie 5 months.

The estate of D. Y. Gaines, Sr., at the time of his death, was insolvent.

After the death of Mrs. Lina Gaines, defendant W. D. Gaines, guardian of the estate of Bettie, rented out the land in controversy and collected the rents. The land was never occupied by Mrs. Lina Gaines after she left it, nor by either the guardian, W. D. Gaines, or defendant Bettie Gaines. No order of the Probate Court was made authorizing the guardian to rent the land, or setting it aside to him or his ward, Bettie, as a homestead, or authorizing them to so occupy it. It appears that the guardian reported the collections of rent to the Probate Court, and that his reports were approved.

The court below—and, we believe, correctly—found that Mrs. Lina Gaines, by her removal to another county, under the circumstances as disclosed by the facts, had abandoned her homestead interest in the land in controversy. However this may be, we do not believe that the appellant minor, Bettie Gaines, can claim any homestead interest by virtue of the prior occupancy of her deceased mother. Her rights in that respect must be determined by the law in force when her mother died, in 1883.

The Constitution, in order to defeat a partition of the homestead among the heirs upon whom descent is cast when neither of the parents survive, requires that it shall be set aside, by an order of a proper court having jurisdiction, to the guardian of the minor children for use and occupancy. Art. 16, sec. 52, Const. 1876. The minor or his guardian has no possessory right in the old homestead by virtue of the fact that it was once the homestead, but the right of possession as the homestead of the minor can only be acquired when it is based upon an order of court designating the property for such purpose. Ashe v. Youngst, 65 Texas, 637.

The Probate Court that has the jurisdiction over the interests of the ward may, for sufficient reasons, decline to set aside the property for the use of the ward or his guardian.

No order of court exists in this case which authorizes the minor or her guardian to occupy the property in controversy as their homestead. The fact that the guardian, without an order of the court, collected the rents of the property and accounted for it in his reports to the court showing the condition of his ward's estate, and the approval of such reports by the court, can not be held tantamount to an order authorizing the guardian

and his ward to occupy the property as a homestead. The court could properly approve such reports without intending the effect of giving the ward a greater interest in the property than that of the other heirs.

We will next determine what interest the appellant Bettie Gaines acquired in the property upon the death of her father and mother.

D. Y. Gaines, at the time of his death, in March, 1876, with his second wife, the mother of appellant Bettie, and with her the appellees, who were then all minors, was living on the property in controversy as their homestead. His estate at that time was insolvent. The rights of the parties in ascertaining their respective interests in the property constituting the homestead are to be determined at the time when descent was cast by the death of D. Y. Gaines, which occurred prior to the adoption of the Constitution of 1876. The law in force at the time of his death vested in the surviving wife and minor children, when the estate was insolvent, an absolute title in the homestead, free of the claims of creditors of the estate and of adult heirs. The absolute fee, under such circumstances, became vested in the surviving wife and the minor children. Such has been the interpretation placed upon the laws of 1848 and the probate laws of 1870, which latter govern the disposition of this case. Green v. Crow, 17 Texas, 180; Horn v. Arnold, 52 Texas, 161; Scott v. Cunningham, 60 Texas, 566; Watson v. Rainey, 69 Texas, 321; Zwernemann v. Von Rosenberg, 76 Texas, 525; Childers v. Henderson, 76 Texas, 664.

The difference between the law of 1848 and that of 1870 consists in the former act more clearly defining the interest in the property which the several beneficiaries shall take. 60 Texas, 566. The law of 1870 did not provide what interest the surviving wife and minor children should each respectively take in the property.

In determining the interest that each of the beneficiaries may be entitled to when the grant is in solidum, we understand the law to be, that their interest shall be equal in the thing granted. Applying this rule to the facts of this case, we think the widow, Mrs. Lina Gaines, and the four minor children, at the time of the death of D. Y. Gaines, were each entitled to a fifth-interest in the property in controversy. Upon the death of Mrs. Gaines, her interest descended to the appellant Bettie Gaines, and such interest, with that of one-fifth that Bettie acquired when her father died, would make her total interest in the property equal two-fifths. Therefore, the judgment of the court below awarding her one-fourth interest in the property is erroneous.

But for the fact that the record discloses that the guardian of the appellant collected the rents of the property, and, it seems, applied same to the use of the appellant Bettie, we would reverse and render this judgment. But as the amount of rents, and whether it was used for the bene-

fit of the minor, and what proportion it bears to the value of the property, is left uncertain by the evidence, we will reverse the judgment and re-mand the cause for another trial.

*Reversed and remanded.*

Delivered October 18, 1893.