CASE 16.—ACTION BY A. BLOCH AGAINST J. T. TARRENT'S
ADMINISTRATOR AND OTHERS TO SUBJECT THE
HOMESTEAD OF DECEDENT TO THE PAYMENT
OF HIS DEBT.—February 27.

## Bloch v. Tarrent's Admr., &c.

Appeal from Simpson Circuit Court.

W. P. SANDIDGE, Circuit Judge.

From a judgment of dismissal, plaintiff appeals.
Reversed.

Homestead—Abandonment by Widow—Liability to Husband's
Debts—Under the homestead laws of this State, Ky. Stats.,
section 107, the limitation of the widow's right to the use of
the homestead so long as she occupies it, is a vital part of
the statute. The Legislature in so limiting her right did not
intend to give her a life estate, and reasonable effect must be
given to the words, "so long as she occupies the same."
The purpose of the statute is to secure the widow in a home
so long as she desires to occupy it, and when she ceases to
occupy it as a homestead it becomes subject to her deceased
husband's debts.

JOHN M. GALLOWAY for appellant.

We submit, that where a widow remarries and moves away from
her deceased husband's homestead to her second husband's home,
owned by him, to live there for life, she thereby takes another
permanent home, and acquires in and to it an inchoate homestead
right, which she would be entitled to hold in case of his death,
and if she can hold her first husband's homestead, she would thus
have two homesteads, and, perchance, might have a third hus-
band and secure a third homestead, and so on. This is not the
law. (Thompson on Homesteads, section 242; Phipps v. Acton,
12 Bush, 376; Jones, &c., v. Green, 26 Ky. Law Rep., 1191; Free-
man v. Miller, 22 Ky. Law Rep., 859; Bryant v. Bennett, 22 Ky.
Law Rep., 1866; Clay v. Wallace, 25 Ky. Law Rep., 820; Crabb v
Potter, 12 Ky. Law Rep., 430; Ky. Stats., sections 1707-1708.

Bloch v. Tarrent's Admr., &c.

C. W. MILLIKEN for appellee.

It is shown by this record that the widow, after her husband's death, being destitute, left her homestead and went, with her helpless babe, to live with her mother, some miles away. She at no time ceased to exercise control of the homestead, but rented it out to clothe herself and children.

Appellant does not contend that she forfeited her right to the homestead by going and living with her mother, but does contend that because she married and left her mother's to go with her husband to his home she thereby forfeited her deceased husband's homestead. We submit that she did not by such remarriage and going to her husband's home forfeit her right to her former husband's homestead.

OINION BY CHIEF JUSTICE HOBSON—Reversing.

Some years ago J. T. Tarrent died intestate, a resident of Simpson county, the owner of a small farm worth less than $1,000. He left surviving him a widow and two children. Some time after his death his widow married John Butts, who lived about seven miles away from the home of her former husband on a farm of his own. Since her marriage with Butts she has made his farm her home; the children residing there with her. The evidence shows that she has made the home of her second husband her permanent residence, and that she no longer occupies the home of her first husband, except that she holds it by a tenant. When she had been living several years at the home of her second husband, A. Bloch, who was a creditor of her first husband, brought this suit to subject the land owned by him at his death to the debt which Bloch held, and, the circuit court having dismissed his petition, he appeals.

No question is made as to the right of the infants to occupy the land as their home until each becomes 21 years old, and it is not claimed that the abandon-

ment by the mother affects in any way the rights of the infants. One of the children is now 15 years old, and the other 7. As each of them becomes of age his right to occupy the homestead will cease. Bloch seeks to sell the land subject to the infants' right of occupancy. Section 1707, Ky. St. 1903, is as follows: "The homestead shall be for the use of the widow so long as she occupies the same, and the unmarried infant children of the husband shall be entitled to a joint occupancy with her until the youngest unmarried child arrives at full age. But the termination of the widow's occupancy shall not affect the right of the children; but said land may be sold, subject to the right of said widow and children, if a sale is necessary to pay the debts of the husband." It will be observed that the widow is not given a life estate in the homestead. She is only given the use of it so long as she occupies it. It has been held that her sale and conveyance of the land allotted to her as homestead, though ineffectual to pass the title, is an abandonment of the homestead, and that the heirs may recover the land from the purchaser. Freeman v. Mills, 39 S. W. 826, 19 Ky. Law Rep., 316; Bryant v Bennett, 61 S. W. 1004, 22 Ky. Law Rep., 1866; Kimberlin v. Manson, 62 S. W. 494, 23 Ky. Law Rep., 42 In Crabb v. Potter, 14 S. W. 501, 12 Ky. Law Rep., 432, the widow broke up housekeeping and made her home with her married daughter dividing the homestead between her three children who, took possession. It was held that the land was subject to the debts of her husband, on the ground that she had abandoned the homestead.

Section 1708, Ky. St. 1903, gives the surviving husband the same rights in a wife's homestead as

section 1707 gives the surviving wife in her husband's homestead. In Clay's Guardian v. Wallace, 116 Ky., 599, 76 S. W. 388, 25 Ky. Law. Rep. 820, the court, having under consideration the husband's rights in his wife's homestead, said: "His homestead rights therein depend upon its occupation by him. Whenever he permanently ceases to occupy the homestead of his deceased wife, his right thereto ceases, and the property reverts to the heirs at law of the wife." In Jones v. Crawford, 119 Ky., 84 S. W. 568, 27 Ky. Law Rep. 191, 68 L. R. A. 299, an infant had married, and the question was whether, when she was married and was making her permanent home with her husband on his land, she was still entitled as an infant to a homestead in her father's land. It was held that she was not. The court said: "The heirs at law have no title during their ancestor's life to his property. Upon his death they take simply what the law gives them, and subject to the terms imposed by law. There is no inherent natural right of inheritance. So when the Legislature created the privilege of homestead exemption in favor of a householder, and continued it after his death for certain members of his family, it was competent for the lawmaking body to select those members whose interests and whose relation to society were such as to bring them within the public policy treated of by the enactment, and who should for these reasons be favored by the statute. It was likewise competent, and perhaps necessary, to provide in what contingencies the right so conferred might be lost or otherwise terminated. The widow, by abandonment of the homestead, and the children, upon reaching majority, lose their rights in the homestead as a homestead. The unity of the family

—of the one family—of the deceased owner is looked
to. When the widow abandons the homestead, as by
remarrying and removing permanently from it, she
is no longer regarded by the law, for the purposes
of the application of the benefits of this statute, as
a member of that family. When an infant child
reaches his majority, he, too, is no longer a member
of the decedent's remaining 'family,' within the con-
templation of the statute. If an infant child
marries, it thereby becomes a member of another
family, that of his or her own—a new family—the
head of which would be entitled to his or her own
homestead exemption as such head of a family."

The precise question before us arose in the case of
Wright v. Dunning 46 Ill. 271, 92 Am. Dec. 257, where
it was said that after the death of the husband the
widow being under no disability may abandon the
homestead precisely as he could have done, and that
whenever it appears that she has acquired another
place of permanent abode she thereby loses all right
to claim the statutory privilege. In the subsequent
case of Buck v. Conlogue, 49 Ill. 391, the court again
said of the widow who had married a second husband,
in speaking of her claim to the old homestead: "Her
husband's home is her home, and she cannot insist
that she has not acquired a new one; and by its
acquisition she lost the right of homestead." In
Paul v. Paul, 136 Mass. 286, the widow built a house
on another tract and moved into it, not knowing that
she had a right of homestead. It was held that she
had lost her homestead. The court said that her
ignorance did not affect the fact that she had ceased
to occupy the premises, and had long permanently
made her home elsewhere. In Hornback v. Brown

91 Iowa, 316, 59 N. W. 33, the surviving husband ceased to occupy the homestead, and permanently made his home elsewhere. It was held that the land was subject to sale. The court said: ''The survivor was given the right to a shelter and privileges of a home so long as the premises should be used for a home, and is permitted to retain the homestead as a homestead for homestead purposes only. When it is abandoned for such purposes, the homestead exemption is at an end.'' To the same effect see Gaines v. Gaines, 4 Tex. Civ. App. 408, 23 S. W. 465; Moss v. Smith (Tex. Civ. App.) 68 S. W. 533; Shepard v. Brewer, 65 Ill. 383; Orman v. Orman, 26 Iowa, 361.

It is true a contrary doctrine was announced in West v. McMullen, 112 Mo. 405, 20 S. W. 628, but an examination of the case will show that it was based on the statute there which gave the widow a life estate in the homestead of her deceased husband, and did not confine her to the right to use it so long as she occupied it. The limitation of the widow's right to the use of the homestead so long as she occupies it is a vital part of our statute. The Legislature in so limiting her right did not intend to give her a life estate, and reasonable effect must be given to the words ''so long as she occupies the same.'' Were we to hold otherwise, the widow might make her permanent home in a distant State, on land of her own or of her second husband, and still hold the homestead against the husband's creditors or his heirs. The purpose of the statute is to secure the widow in a home so long as she desires to occupy it. John Butts is entitled to a homestead because he and his wife are living on the land which he owns and it is their home.

If he should die, Mrs. Butts would be entitled to a homestead in his land, but she woud not be entitled to hold this homestead in addition to the homestead in the land of her first husba.:d. If she could, the law which was intended to secure a home and only one home to this class of persons might in some cases. exempt for their benefit a number of homes, and she who had had several husbands, or he who had had a number of wives, might live elsewhere, and have a comfortable incom from lands here and there, all held as homesteads.

Judgment reversed, and cause remanded for further proceedings consistent herewith.