## Taree v. Spriggs.

(Decided June 12, 1912.)

### Appeal from Caldwell Circuit Court.

1. **Homestead—When Right of Not Lost.**—Section 1707 Ky. Stats., gives a homestead to the wife as long as she occupies the same. The widow's right to homestead continues so long as she is in the possession of it by herself, agents or tenants. It is not necessary that she should actually live upon it. Appellant having been forced out of the property in controversy, during her temporary absence therefrom, by the wrongful act of appellee in ousting her tenant, removing her personal effects therefrom, and forcibly taking possession of the same, did not thereby lose her right of homestead therein.

2. **Homestead—What Constitutes Abandonment of.**—In order to constitute an abandonment of the homestead, by a widow it must clearly be made to appear, that there was a cessation by her of the use of the homestead as such, and that she permanently took up her abode elsewhere.

R. W. LISANBY for appellant.

HUSBANDS & HUSBANDS for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This is an appeal from a judgment of the Caldwell circuit court, refusing appellant a homestead in a house and lot, alleged to have been owned and occupied as a residence by her deceased husband, Thomas Hollowell and family, including herself, at the time of his death. As originally brought the action was one of ejectment, in which appellant sought to recover the possession of the property, upon the alleged ground that she was the owner thereof, and that appellee was wrongfully in possession of same. Appellant, however, later filed an

amended petition in which is was averred that the house and lot belonged to her deceased husband and was occupied by him as a residence at the time of his death; that it then descended under the statute to his children, subject to appellant's right of dower and homestead therein, and that she, as his widow, continued in the possession thereof after her husband's death, occupying and claiming the whole of it as a homestead, as it was worth less than $1000.00.

It was further alleged in the amended petition that her husband many years prior to his death borrowed of appellee, $200.00, and to secure its payment executed to him a deed to the house and lot in question, which was intended by the parties to be and was a mortgage; that thereafter the lien debt was paid in full by her husband and the mortgage lien satisfied and discharged, but that it was not released of record by appellee, nor did the latter reconvey the property to the mortgagor, as he had agreed to do; and that shortly before the institution of the action and while appellant was temporarily away from the house and lot, appellee forcibly and illegally ejected her tenant from the property, and himself wrongfully and forcibly took possession thereof. The relief asked in the prayer of the amended petition was, that the deed made appellee by the deceased husband be canceled; that the lien created on the house and lot by the deed be discharged; the property restored to appellant and her right to a homestead therein quieted.

The appellee's answer traversed the averments of the petition as amended, and averred that the deed made him to the house and lot by appellant's deceased husband, was not intended as a mortgage, but as a deed absolute, whereby he was invested with the fee simple title to the property.

After the filing of the answer the case was transferred to the equity docket and tried by the court.

It is apparent from the judgment that the circuit court did not pass upon the question whether the writing referred to was a deed or mortgage, or if a mortgage whether the mortgage debt had been paid; but dismissed the petition on the ground that the appellant had abandoned the house and lot as a homestead. It is, in our opinion, clear from the evidence that the writing from the appellant's husband to appellee in which she joined, though purporting to be a deed, was in fact a

mortgage given to secure $200.00, borrowed of him by the husband.

This is shown by the admissions of the appellee, the testimony of various witnesses and by the facts, that although the alleged deed was made in 1890, Hollowell and his family continued to live on the property, and he to claim it as his own and pay the taxes upon it, until his death in 1900; and by the still further fact that appellant and her children occupied it as a homestead and under claim of ownership uninterruptedly for nine years after his death, during which time appellant paid the taxes thereon. It was also shown by the evidence that Thomas Hollowell, before his death, paid to appellee the $200.00 borrowed of him and to secure which the mortgage was executed. The chancellor seemed of the opinion that $4.00 or $5.00 of the mortgage debt had not been paid, but we think it sufficiently appears from the evidence that it was all paid; at any rate, if there remained any unpaid balance due appellee, it was more than satisfied by his use and occupancy of the house and lot during his wrongful possession thereof. The payment of the $200.00 by Hollowell and its acceptance by the appellee, also proves that the so-called deed was, in fact, a mortgage.

Six years after the death of Hollowell, appellant married Steve Taree, following which he took up his residence with her on the lot in question.

In November, 1909, in the absence of appellant and that of a tenant, whom she had temporarily put in possession of the property, appellee wrongfully threw therefrom and destroyed the appellant's household goods, which she had not removed, and also some of the personal effects of the tenant and placed a tenant of his own in the house. As it is manifest that appellant had a right of homestead in the property which she claimed in lieu of dower, it only remains to be determined whether her homestead was lost by her abandonment of it. It is insisted for the appellee that at the time he took possession of the property, appellant was living with her present husband in Illinois, and that their place of residence was in that state, which constituted an abandonment of appellant's homestead in the property.

It appears from the evidence that Taree was of a roving disposition and that after his marriage to appellant, although his actual residence was with her on

the lot in controversy, much of his time was spent away from home in such employment as he was able to secure, sometimes working in stone quarries, at others on railroads and farms. In 1909 he worked on a farm near Paducah and while so employed appellant occasionally visited him and remained several days or weeks at a time; thereafter he went to Illinois, and there secured work in a mine. It does not definitely appear from the evidence how long he remained in Illinios; it does appear, however, that appellant went to him in Illinois and remained with him for perhaps some months but that, at all times, when leaving the house and lot in question to go to the husband, she did so with the avowed purpose of returning in a short time: also that she always left a great part of her furniture and other effects in the house and someone in charge of the property as her tenant.

We think it fairly apparent from the evidence that it was never her purpose to abandon the property as a homestead. Her husband remained in Illinois perhaps a year or more, and there was some evidence to the effect that he, on one occasion, voted in that state, but, as the evidence also shows, appellant was not with him during his entire stay in Illinois, and that she regarded the house and lot in controversy as her place of residence, and all the time retained possession thereof, in person or by tenants, it cannot be said that there was an abandonment of the homestead.

In Phipps, &c. v. Acton, &c., 12 Bush, 375, it was held that a widow's temporary absence from the homestead set apart to her in her deceased husband's lands, after having rented same out and placed her tenants in possession, was not such an abandonment as would forfeit her claim to the homestead under the statute; in other words, that so long as the widow is in possession of the premises by herself, her agents or tenants, her right to the homestead will continue.

In Young v. Milward, &c., and Young v. Young, 109 Ky., 125, it appears that the widow surrendered her homestead to an heir at law of her deceased husband under the belief that she had no right of homestead therein; the court held, however, that as she was entitled to homestead or dower in the land, she did not lose her right to her homestead in the property because she surrendered it under the circumstances mentioned. In the opinion it is said:

"The statute, section 1707, gives it (the homestead) to the widow so long as she occupies the same. The widow's right to homestead continues so long as she is in the possession of it by herself, agents or tenants. It is not necessary that she should actually live upon it. (Phipps v. Acton, 12 Bush, 375; Sansberry v. Simms, Admr., 79 Ky., 527). Having been forced out of the possession of the property under the circumstances detailed, the occupancy of Young for the purpose of determining her right to the homestead must be considered as that of herself. It would be an illiberal and unreasonable interpretation of the statute, to hold that she, in the meaning of the statute, had ceased to occupy her homestead."

Cases have come before this court in which it was held that there had been an abandonment of the right of homestead. Thus in Crabb v. Potter, 12 R., 432, where the widow broke up housekeeping and made her home with a married daughter, after dividing her homestead between three other children, who took possession; it was held that the land was subject to the debts of her deceased husband, on the ground that she had abandoned the homestead.

In Clay's Guardian v. Wallace, 116 Ky., 599, it was held, that the surviving husband, whose right to a homestead in the wife's land is placed by the statute on the same footing with that of a widow to a homestead in the husband's land, lost such homestead in the wife's land by ceasing to occupy it and permanently taking up his residence elsewhere.

In Block v. Torrent, 122 Ky., 138, the deceased husband, Torrent, left unpaid debts and a farm of the value of $1,000, which his widow occupied after his death with her two infant children, as a homestead. Later she married John Butts, who lived on a farm of his own, seven miles from the land left by her first husband. Upon her marriage to Butts she removed with her two children to his home where they remained. Several years after her second marriage, Block, a creditor of the first husband, brought suit to subject the land left by him to the payment of his debt, alleging that Mrs. Butts had abandoned her homestead therein, but conceding that each of the children was entitled to a homestead until arrival at twenty-one years of age. The circuit court dismissed Block's petition, but this court reversed the judgment holding, that the land should be sold to pay his

debt subject to the children's right of homestead. In the opinion it is, in part, said:

"The limitation of the widow's right to the use of the homestead so long as she occupies it, is a vital part of our statute. The Legislature in so limiting her right did not intend to give her a life estate and reasonable effect must be given to the words, 'so long as she occupies the same.' Were we to hold otherwise, the widow might make her permanent home in a distant State, on land of her own, or her second husband, and still hold the homestead against the husband's creditors or his heirs. The purpose of the statute is to secure the widow in a home so long as she desires to occupy it. John Butts is entitled to a homestead because he and his wife are living on the land which he owns and it is their home. If he should die, Mrs. Butts would be entitled to a homestead in the land, but she would not be entitled to hold this homestead in addition to the homestead in the land of the first husband. If she could, the law, which was intended to secure a home and only one home to this class of persons might in some cases exempt for their benefit a number of homes, and she who had several husbands, or he who had a number of wives, might live elsewhere, and have a comfortable income from lands here and there, all held as homesteads."

It will be observed that in all these cases, in which it was held that there had been an abandonment of the homestead, the decisions are made to rest upon the ground that such abandonment resulted from a cessation of the use of the homestead as such and the taking up of a permanent abode or residence elsewhere; these facts being clearly made to appear from the evidence. No such facts are presented in the instant case. On the contrary, the evidence is substantially all to the effect, that appellant never had any intention of abandoning the homestead; that there had been no cessation of its use by her; and that she has never permanently taken up her residence elsewhere. Her present husband had no permanent home of his own, in Illinois or elsewhere, for her to remove to, and her stay with him in Illinois was but temporary. That is shown by the fact that whenever she left her home to go to him, her furniture and other personal effects were invariably left in the house and the house and lot in charge of a tenant. In other words, appellant has in person, or by her tenants, continued in

the actual, adverse possession of the property uninter-
ruptedly, claiming it as a homestead from the death of
her first husband, down to the time it was forcibly en-
tered by appellee and her household effects removed
therefrom by him and destroyed. Since which time she
has lived in a rented house in the vicinity of the home-
stead awaiting a decision of the court in this case.

We think this case clearly akin to and controlled by
Phipps, &c. v. Acton, &c.; Young v. Milward and Young
v. Young, supra; therefore, appellant should have been
adjudged the house and lot in controversy as a home-
stead.

As appellant's infant children by the first husband
are not parties to the action, we do not feel called upon to
formally pass upon their rights in regard to the prop-
erty in question. It is not, however, improper for us to
say that they have the right to occupy the property with
the mother as a homestead, until they reach the age of
twenty-one years, respectively; and upon the termina-
tion of the mother's homestead will be entitled to its
possession jointly as the heirs at law of the deceased
father.

For the reasons indicated the judgment is reversed
and cause remanded, with directions to the circuit court
to set it aside and enter another giving appellant the
homestead claimed, in conformity to the opinion.