### Mary Hoefling et al. v. Dorothea Hoefling et al.

No. 2404. Decided May 28, 1914.

1.—Homestead—Estates of Decedents—Abandonment.

The homestead of decedent, whether the estate be solvent or insolvent, is not subject to sale for his debts. Though not set apart to his widow and minor children, or abandoned by them, it descends to his heirs free from claims of creditors. Rev. Stats., 1911, arts. 3235, 3413, 3414, 3421-3428. (Pp. 356-362.)

**2.—Same—Statutory Construction.**

The purpose of article 3422 (2055) (2002), Rev. Stats., 1911, was not to declare an exemption of the homestead in case of insolvent estates which did not exist in solvent ones; nor is it to be taken as a denial of such exemption except in case of insolvent estates by application of the maxim *inclusio unius exclusio alterius.* Its object was to prescribe a rule for descent and distribution of the homestead where the estate was insolvent different from that in solvent estates—a rule which has been held unconstitutional. (Const., art. 16, sec. 52; Zwerneman v. Von Rosenberg, 76 Texas, 522.)    (Pp. 362-364.)

**3.—Cases Discussed.**

Moore & Son v. Moore, 89 Texas, 29, examined and limited, and numerous Texas cases on homestead descent and distribution distinguished.   (Pp. 357-359.)

**4.—Homestead—Incumbrance—Abandonment.**

A lien created by decedent upon real property was void against his homestead, which upon his death descended to his heirs free from such incumbrance, though the estate was solvent and the widow abandoned such homestead when it was set aside to her. It then became subject to distribution. (Pp. 353-364.)

Error to the Court of Civil Appeals, Fourth District, in an appeal from Bexar County.

Mary Hoefling and others obtained writ of error on a judgment of the Court of Civil Appeals, reversing that of the court below and rendering judgment against them.

*Henry E. Vernor, Clark & Bliss,* and *Denman, Franklin & McGown,* for plaintiffs in error.—In order to be and remain a homestead a place must be used for the purposes of a home; it must be one's place of residence where one sleeps and eats, and where one surrounds one's self with the insignia of a home. Sec. 51, art. 16, of the Constitution; Philleo v. Smalley, 23 Texas, 499; Stanley v. Greenwood, 24 Texas, 224; Rogers v. Ragland, 42 Texas, 422; I. & G. N. R. R. Co. v. Winter, 44 Texas, 597; Woolfolk v. Ricketts, 48 Texas, 28; Haswell v. Forbes, 8 Texas Civ. App., 82; American, etc., Co. v. Pace, 23 Texas Civ. App., 222.

The fact that a place was occupied and used for the purposes of a home by the surviving constituent of the family under order of the probate court setting aside such place as a homestead to such constituent will not prevent the homestead right from being lost by the permanent removal of such constituent of the family to another State or Territory or country with no intention of returning to reside in this State. Trawick v. Harris, 8 Texas, 312; Alston v. Ulman, 39 Texas, 157; Jordan v. Godman, 19 Texas, 273; Burcham v. Gann, 1 Posey, 333; Smith v. Uzzell, 56 Texas, 317; Reece v. Renfro, 68 Texas, 192; McElroy v. McGoffin, 68 Texas, 208.

Though the property in controversy in this suit was duly set aside to Dorothea Hoefling, the widow of Wm. Hoefling, Sr., as a homestead by the Probate Court of Bexar County, yet, when she left the State of Texas and went to the District of Columbia to reside with her daughter with no intention of returning to Texas to reside, she lost her homestead right in said property; and it became subject to partition and to the payment of the community debts of her and her said husband. Moore v. Moore, 89 Texas, 29; Ashe v. Yungst, 65 Texas, 639; Hudson v.

Givens, 64 Texas, 471; Smith v. Uzzell, 56 Texas, 315; Cline v. Upton, 56 Texas, 319; Woolfolk v. Ricketts, 41 Texas, 358; Russell v. Nall, 2 Texas Civ. App., 60; Bell v. Greathouse, 20 Texas Civ. App., 478; Wilson v. Swasey, 20 S. W., 48; Boehm v. Beutler, 16 Texas Civ. App., 380; Foster v. Johnson, 89 Texas, 645.

When Dorothea Hoefling lost her homestead rights in the property in controversy by leaving the State of Texas and going to the District of Columbia to permanently reside there with no intention of returning to the State of Texas to reside, said property became subject to the lien given by law to the creditors having valid and subsisting claims against the community estate of her and her deceased husband. Moore v. Moore, 89 Texas, 29; Blinn v. McDonald, 92 Texas, 604; French v. Grenet, 57 Texas, 273; Northcraft v. Oliver, 74 Texas, 172; Lumpkin v. Nicholson, 10 Texas Civ. App., 108.

It is only when an estate is insolvent that the title to the property occupied and used as a home or that may be set aside by the Probate Court as a homestead vests in the widow and children of the deceased in such a manner that such property can never become subject to the payment of debts of the deceased other than those for the purchase of money thereof, the taxes thereon, or for work and material used in constructing improvements thereon. Rev. Stats., art. 2055; Cameron v. Morris, 83 Texas, 17; Lacy v. Lockett, 82 Texas, 194; Lumpkin v. Nicholson, 10 Texas Civ. App., 108.

If appellants relied upon insolvency of the estate of Wm. Hoefling, Sr., in order to avoid the enforcement of Mary Hoefling's claim against said estate against the property in controversy, they should have pleaded such insolvency, should have proved the same and should have requested the trial court to have submitted this issue to the jury; and, having failed to do this, they can not be heard to urge such an issue for the first time in the appellate court. Love v. McIntyre, 3 Texas, 10; Mims v. Mitchell, 1 Texas, 433; Carter v. Wallace, 2 Texas, 206; Towner v. Sayre, 4 Texas, 28; Horton v. Crawford, 10 Texas, 382; Rivers v. Foote, 11 Texas, 662; Thompson v. Thompson, 12 Texas, 327; Dickinson v. Lott, 29 Texas, 172; Caldwell v. Brown, 43 Texas, 216; McCamant v. Batsell, 49 Texas, 363; Givens v. Sloan, 73 Texas, 662; Scarbrough v. Alcorn, 74 Texas, 358.

Even if appellants could have relied upon insolvency of the estate of Wm. Hoefling, Sr., to avoid the enforcement of Mary Hoefling's claim against the property in controversy without pleading the same, still the undisputed testimony did not show that said estate was insolvent at the time of the death of the said Wm. Hoefling, Sr., and appellants waived the submission of such issue by failing to request its submission. Rev. Stats., art. 1331; Aultman, etc., Co. v. Cappleman, 36 Texas Civ. App., 523; York v. Hilger, 84 S. W., 1118; Holley & Co. v. Simmons, 38 Texas Civ. App., 124; McCaskey v. Morris, 40 Texas Civ. App., 390; Moore v. Pierson, 100 Texas, 113; Edelstein v. Brown, 95 S. W., 1129; Mabry v. Kennedy, 49 Texas Civ. App., 45; Hall v. Southland, etc., Co., 116 S. W., 834; Lawrence v. Woods, 118 S. W., 553.

An estate may be made to begin in future by deed.   Rev. Stats., art. 632; Chrisman v. Wyatt, 7 Texas Civ. App., 40; Jenkins v. Adcock, 5 Texas·Civ. App., 466; Carpenter v. Hannig, 34 S. W., 774; Leslie v. McKinney, 38 S. W., 378; McLain v. Garrison, 39 Texas Civ. App., 431; Martin v. Faries, 22 Texas Civ. App., 539.

*Frank J. Bosshardt* and *R. P. Ingrum,* for defendants in error.—The instrument described in the answer and cross action of Mary Hoefling and adopted by H. E. Vernor, D. Sullivan and W. C. Sullivan, if of any legal effect whatever, being but a mortgage, and the property against which the lien was foreclosed being the homestead of Wm. Hoefling, deceased and his ·wife, Mrs. Dorothea Hoefling at the time said instrument was executed, before, and subsequent thereto, the same is void as against said homestead.   Inge v. Cain, 65 Texas, 75; Hays v. Hays, 66 Texas, 606; Texas Land Co. v. Blalock, 76 Texas, 89; Caywood v. Henderson, 44 S. W., 927; Campbell v. Crowley, 56 S. W., 374; Woeltz v. Woeltz, 57 S. W., 905.

The homestead of a family upon the death of the husband, where a constituent of the family survives, continues as exempt property, and is not subject to administration for any purpose, and vests in the heirs of the owner absolutely, without remainder or ultimate liability to his creditors, subject only to use as a homestead by surviving constituents of the family as provided for by the Constitution and statutes.   Art. 16, secs. 50, 51 and 52, of the Constitution of Texas.   See the following articles of the Rev. Stats. of Texas:   Arts. 1869, 2395, 2396, 2401, 2406, 2407, 2055, 2056, 2057, 2060, and 2061; Givens v. Hudson, 64 Texas, 473; Zwernemann v. Von Rosenberg, 76 Texas, 522 Childers v. Henderson, 76 Texas, 664; Lacey v. Locket, 82 Texas, 194; Cameron v. Morris, 83 Texas, 14; Roots v. Robertson, 93 Texas, 365; Ford v. Simon, 93 Texas, 586; Wilkins v. Briggs, 48 Texas Civ. App., 596; Simkins, Administration of Estates in Texas, p. 184.

MR. JUSTICE HAWKINS delivered the opinion of the court.

William Hoefling, Sr., hereinafter called decedent, and his wife, Dorothea, owned lot 9 in block 16, city block 432, in San Antonio, as community property, and made their home thereon from a date prior to September 17, 1895, until he died in November, 1898.   Decedent left surviving him his said wife, who qualified as administratrix of his estate, and their three children—Rudolph, Emma, who married Wolfe, and Henry, who conveyed to plaintiff in error, L. Thulemeyer, an undivided one-eighth interest in said lot; also four grandchildren, W. R. Daisy, who married Voight. G. A., and Willie, children of another son, William Hoefling, Jr., whose death preceded that of decedent; also Mary Hoefling, who was the widow of said deceased son and mother of said grandchildren.

By order of the Probate Court said lot 9 was set apart, as a home-

stead, to decedent's widow, but she subsequently abandoned it prior to the institution of this suit.

William Hoefling, Jr., had insured his own life for the benefit of his said wife, Mary, and after his death she collected thereon $3500, which she loaned to her father-in-law, William Hoefling, Sr., on September 17, 1895, taking his interest-bearing note therefor, in consideration of which loan he and his said wife on that day executed, duly acknowledged in the manner required by law for conveyance of real estate, and delivered to said Mary Hoefling a written instrument which recited said loan and note, and continued thus: "Now, therefore, to secure the payment of said note, and in event of failure to pay when due or in event of the death of the said William Hoefling, then in such events, the said Mary Hoefling shall have and we do hereby grant to her a $3500 interest in our joint estate of which we may be possessed at such time, irrespective of her natural heirship or that of any others," etc. A portion of that debt remains unpaid.

Said note and written instrument were duly proved up, allowed by the administratrix, and approved by the Probate Court, as a third-class claim against the estate of decedent, for $3500 with interest, and, for payment thereof, that court decreed a foreclosure of lien "upon all the property of said estate." Mary Hoefling transferred one-third of said claim to Vernor, who transferred his interest in said claim to D. Sullivan & Co., a firm composed of D. Sullivan and W. C. Sullivan.

Having acquired Henry Hoefling's undivided one-eighth interest in said lot 9, L. Thulemeyer brought this suit for partition thereof, and for an accounting for rents thereon, and distribution thereof. The defendants were said Dorothea Hoefling, a widow, Rudolph Hoefling, Emma Wolfe and her husband, Bert V. Wolfe, Mary Hoefling, a widow, W. R. Hoefling, Daisy Voight and her husband, Willie Hoefling, a minor, and H. E. Vernor, D. Sullivan and W. C. Sullivan.

Mary Hoefling answered, alleging the foregoing facts relating to her said loan to William Hoefling, Sr., and said note and written instrument of September 17, 1895; that after Dorothea Hoefling qualified as such administratrix she had represented that there was ample property, other than said lot 9, to pay off said debt, and induced said Mary Hoefling to prove up her said claim against decedent's estate; that said administratrix proposed to her that if she would allow her to keep $500 out of $1580 which said administratrix had collected for said estate the latter would recognize her interest in the property in controversy to the extent of the balance of the former's said claim, which offer she accepted; whereby she became the owner of an undivided 121/370 interest in said property; and that she had assigned and conveyed an undivided one-third interest in and to her said claim right and title, and that he had assigned and conveyed same to said D. Sullivan & Co.; whereupon she prayed for judgment against all the other parties for her said interest in said property, and for general relief.

Dorothea Hoefling, Emma Wolfe and her husband, and Rudolph Hoefling defended upon the grounds that said claim of Mary Hoefling

against said estate had been so allowed, and said decree of the Probate Court concerning it entered, and that the property in controversy was not subject to partition because it was the homestead of Dorothea Hoefling, and had been so set apart to her; wherefore the matter was *res adjudicata.* The answer of Vernor and that of the Sullivans adopted said answer of Mary Hoefling, and prayed that their respective interests aforesaid be protected.

The jury, to whom the cause was submitted upon only one special issue, found that Dorothea Hoefling had abandoned said lot 9 as homestead; whereupon the trial court entered a decree that said lot 9 be sold to satisfy said claim of Mary Hoefling, amounting to $5712.45, and that the balance, if any, be distributed as follows: To Dorothea Hoefling, one-half, and to Emma Wolfe and L. Thulemeyer, each, one-eighth; to Daisy Voight, W. R. Hoefling, G. A. Hoefling, and Willie Hoefling, each, one-thirty-second of such balance; that Mary Hoefling now owns two-thirds of her said claim; that D. Sullivan & Co. hold the remaining third of said claim for any debt which said Vernor may owe them, and that two-thirds of the amount of said claim be paid over to Mary Hoefling, and the other third to D. Sullivan & Co. for the purposes stated. From said judgment Dorothea Hoefling, Emma Wolfe and her husband, and Rudolph Hoefling appealed, as against all the other parties.

The Court of Civil Appeals held, substantially, that said written instrument of date September 17, 1895, was intended merely to constitute a lien to secure the note therein mentioned, and, inasmuch as said lot 9, therein described, was at that time the homestead of William Hoefling, Sr., and his said wife, the makers of that instrument, such lien could not apply to said lot 9, but, as to it, was inhibited by the Constitution of Texas; that, under the facts, and the Constitution and statutes and decisions of this State, said lot 9 passed to decedent's heirs exempt from his debts, whether his estate was solvent or not, and so remained; that there was ample evidence to support the jury's finding, and that decedent's widow had abandoned said homestead, but that, as to decedent's creditors such abandonment was wholly immaterial, whether decedent's estate was solvent or not, because, "when William Hoefling, Sr., died the homestead descended and vested in his widow and children, free of any claims of any kind against his estate. It passed forever beyond the reach of creditors, and the loss of its homestead character could not instill life into an invalid lien, whether the same was evidenced by mortgage or other instrument, or by a judgment," and that if plaintiffs in error did not so contend, "they are in no better position when they claim that a creditor's lien, which had not attached to the homestead before, arose when the abandonment took place," and, accordingly, reversed said judgment of the District Court in favor of Mary Hoefling, and decreed that she take nothing by her cross action, that said lot 9 be partitioned, one-half to Dorothea and the other half to said children and grandchildren of decedent, and L. Thulemeyer, who bought a child's share, in the proportions indicated in said judgment of the District

Court, and that said property be sold for such partition and the proceeds distributed among said owners according to their said respective shares.

Mary Hoefling and those claiming under her, as stated, alone applied for a writ of error, which was granted. They complain, first, of the action of the Court of Civil Appeals in treating the estate of said decedent as insolvent, and, secondly, of its holding that, whether said estate was solvent or insolvent, the homestead property, at his death descended to and vested in his heirs exempt from his debts and forever beyond the reach of his creditors, and that, consequently, upon abandonment of the homestead by the widow, plaintiffs in error, as creditors of his estate, had no right to subject said property to payment of their said claim. In support of their said first ground of complaint plaintiffs in error point out the facts that no issue as to solvency or insolvency of the estate was pleaded, or submitted to the jury, and contend that no such issue was made by the evidence. As to that entire phase of this case we deem it sufficient to say this: It is obvious that, if the Court of Civil Appeals be correct in its view that it is wholly immaterial whether said homestead was solvent or insolvent, its action in treating the estate as insolvent resulted in no practical injury to plaintiffs in error; so, in testing their rights in the premises we will give them full benefit of their contention upon that point, and will consider their said second ground of error upon the assumption that said estate was in fact solvent.

Unquestionably, under our present Constitution and statutes, and the decisions of this court, whenever the head of a family dies, intestate, leaving surviving him one or more constituents of the family, such as a widow, or a minor child, or an unmarried daughter remaining with the family, *and his estate is insolvent,* his homestead property, whether it be set apart by the Probate Court for the use and benefit of such surviving constituent or constituents of the family or not, descends and vests in all the heirs of such decedent, in accordance with the provisions of our general statute of descent and distribution, subject, however, to the constitutional and statutory right of the widow and of the guardian of the minor children of the decedent to use and occupy it as a home, but absolutely exempt from any and all present or future liability for such decedent's debts, and so forever free from all claims of his creditors, whether they be approved by the Probate Court or not, except such claims as our Constitution permits to be secured by a lien upon the homestead; and that status, in so far as rights of general creditors of such decedent are concerned, can not possibly be affected by subsequent voluntary sale or abandonment of such homestead property. American Bonding Company of Baltimore v. Logan, 106 Texas, 306, 166 S. W., 1132, decided on a former day of this term, and cases cited. But does the same rule apply where such estate is solvent? If so, said judgment of the Court of Civil Appeals should be affirmed.

In Givens v. Hudson, 64 Texas, 471, and in Roots v. Robertson, Admr., 93 Texas, 365, 55 S. W., 308, the case turned upon the point that no such constituent of the family survived the deceased owner of the home-

stead; consequently all question as to solvency or insolvency of his estate was wholly immaterial. See, also, Phillips v. Price, 12 Texas Civ. App., 408, 34 S. W., 784; Wilkins v. Briggs, 48 Texas Civ. App., 596, 107 S. W., 135.

Hall v. Fields, 81 Texas, 553, 17 S. W., 82, dealt with the rights of the decedent's divorced wife and of their minor children as against the rights of a purchaser of homestead property from the executor of decedent's will. The case did not involve rights of his creditors.

McAllister v. Godbold (Texas Civ. App.), 29 S. W., 417, does not disclose whether the estate of the testator was solvent or not; moreover, that appeal was dismissed by the Court of Civil Appeals for want of a sufficient appeal bond.

In Green v. Crow, 17 Texas, 180, the question now before us was expressly pretermitted · as not material to the decision, because the estate was insolvent.

And in each of the following cases which arose under our present Constitution the estate of the decedent was likewise insolvent: Rainey v. Chambers, 56 Texas, 17; Davis v. McCartney, 64 Texas, 584; Zwernemann v. Von Rosenberg, Admr., 76 Texas, 522, 13 S. W., 485; ·Childers v. Henderson & Co., 76 Texas, 664, 13 S. W., 481; Lacy v. ·Lockett, 82 Texas, 190, 17 S. W., 916; Cameron v. Morris, 83 Texas, 14, 18 S. W., 422; Ford v. Sims, 93 Texas, 586, 57 S. W., 20.

That is also true as to each of the following cases under that Constitution, the references being to decisions by our Courts of Civil Appeals: West v. West, 9 Texas Civ. App., 475, 29 S. W., 242; Stephenson v. Marsalis, 11 Texas Civ. App., 162, 33 S. W., 383; Krueger v. Wolf, 12 Texas Civ. App., 167, 33 S. W., 663; Simms v. Hixon, 65 S. W., 36; Dorman v. Grace, 57 Texas Civ. App., 386, 122 S. W., 401; Davie v. Green, 132 S. W., 874.

The estate was likewise insolvent in each of the following cases which arose under earlier constitutional provisions: Green v. Crow, 17 Texas, 180; Reeves v. Petty, 44 Texas, 249; Horn v. Arnold, 52 Texas, 161; Scott v. Cunningham, 60 Texas, 566; Watson v. ·Rainey, 69 Texas, 319, 6 S. W., 840; Gaines v. Gaines, 4 Texas Civ. App., 408, 23 S. W., 464.

Plaintiffs in error, who appear here in the attitude of general outside creditors of said estate, contend that the decision of this court in Moore & Son v. Moore, 89 Texas, 29, 33 S. W., 217, is squarely in point upon the question before us, and should be regarded as conclusive of this issue; but to neither of those suggestions can we agree. That suit was brought in the District Court for partition of the estate of a decedent, embracing certain lands· and personal property, all being community property of his second marriage. Plaintiffs were the widow and son of decedent, and defendants were his child and grandchildren of a former marriage.

The Court of Civil Appeals upheld the jurisdiction of the District Court upon the theory that there were no outside creditors,—plaintiff's suit for partition in that court amounting to a representation by them that there were no debts against the estate, and, consequently, no neces-

sity for administration through the Probate Court, and the allegation in the answer of the defendants being that there were no debts against the estate other than that which some of the defendants asserted in favor of themselves, which allegation of the defendants was not controverted by either pleading or evidence,—and also held that having thus acquired jurisdiction over the subject matter, and to avoid a multiplicity of suits among the parties, the trial court properly proceeded to an adjustment of the equities of the parties as among themselves as joint or common owners of all the property, and to a final partition thereof.

The widow, who was the sole such constituent of decedent's family who survived him, was one of the plaintiffs, as we have seen, who filed suit for partition of the property. There was no pleading to the effect that she was entitled to or that there existed, in fact, a homestead or other exempt property. The widow did not ask to have the homestead or other property set apart to her as exempt. As to homestead and other exempt property, the Court of Civil Appeals found that "there was no evidence in regard to it, and the verdict made no finding on the subject." Such being the state of the pleading and the evidence with regard to homestead and exemptions, the Court of Civil Appeals treated as fundamental error the action of the trial court in setting apart to the widow a homestead and other property as exempt. there being no assignment of error thereon, and in anticipation of another trial of that cause, below, directed that "if it should·be alleged and proved that there existed a homestead and exempt property in kind, to which the widow is entitled, the court would properly not include them in the partition." And so the Court of Civil Appeals, evidently treating the exemption question as not really existing in that case, as then presented, as to either the homestead or other property described in plaintiffs' petition, reversed the judgment of the trial court, which had undertaken to set apart to the widow a homestead and certain other property as exempt, and proceeded to remand the case to the trial court for a partition of all the property among the heirs, directing, however, an adjustment of certain equities which arose upon the claim of the child and grandchildren of decedent's first marriage, growing out of his failure to pay over their share of the proceeds of a sale by him of a tract of land which was community property of that marriage.

This court, in an opinion by Associate Justice Brown, now Chief Justice, affirmed that decision of the Court of Civil Appeals, but held, expressly, that by filing her said suit for partition of all of said property, including that which in this court was claimed by her as homestead, she waived her right to have the homestead and personal· property exempt from forced sale set apart to her use, and all of said property thereupon became subject to partition among the heirs, and that in such partition the aforesaid equities should be adjusted as therein directed. It is true that in deciding that case this court said: "Upon the death of Moore his estate vested in his heirs and his surviving wife, subject to the payment of his debts"; but, evidently, that was said in the light of the above mentioned facts of that case, particularly those relating to

homestead and exemptions, involving absence of pleading, proof and verdict thereon, and upon the theory that all questions as to homestead or exemptions had been practically eliminated.

There are various other Texas decisions which bear more or less upon the question which we are now considering, but diligent search has failed to reveal even a single case in this court or in any of our eight Courts of Civil Appeals in which the point here involved is shown to have been squarely presented by reason of the solvency of the estate, or expressly decided.

It is, therefore, necessary, in determining the issue in this case, to briefly consider, anew, various provisions of our existing State Constitution and statutes, which bear upon it, in doing which we will· be aided, greatly, by numerous former decisions construing them in cases of insolvent estates, and, in some degree, by decisions construing earlier statutes under previous Constitutions, as applied to insolvent estates.

By sections 50, 51, and 52 of article 16 of the present Constitution of Texas, of 1876, the homestead of a family is defined; it is exempted from liability for all debts, with certain exceptions; and the course of its descent is indicated.

A rural homestead consists of "not more than two hundred acres of land, with improvements thereon"; an urban homestead, of "lot or lots not to exceed in value five thousand dollars at the time of their designation as the homestead, without reference to the value of any improvements thereon." Sec. 51. See, also, Rev. Stats., 1911, art. 3786 (2396), (2336).

Such homestead is "protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used thereon." Sec. 50. See, also. Rev. Stats., 1911, art. 7637 (5183).

It is provided that "on the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution." Sec. 52. This court has uniformly held that the sole purpose of the foregoing provisions of said section 52 was to change the rule of descent, as declared in Horn v. Arnold, 52 Texas, 164, under the Probate Act of 1848, and to make the rule of descent of homestead property thereafter uniform, regardless of whether the estate of the deceased father was solvent or insolvent. It did not deal with exemptions, or with rights of creditors. Bonding Company v. Logan, supra, and cases cited.

In pursuance of the general design to protect the family homestead from forced sale, except as indicated above, a conception which had its origin in Texas, our Legislature has enacted various laws, including the following, which were in force when the case at bar arose, and now remain operative:

Art. 3235 (1869), (1817). "When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will shall vest immediately in the devisees or legatees; and all the estate of such person,

not devised or bequeathed, shall vest immediately in his heirs at law; but all of such estate, whether devised or bequeathed or not, except such as may be exempted by law from the payment of debts shall still be liable and subject in their hands for the payment of the debts of such testator or intestate; and, whenever a person dies intestate, all of his estate shall vest immediately in his heirs at law, but with the exceptions aforesaid shall still be liable and subject in their hands to the payment of the debts of the intestate; but, upon the issuance of letters testamentary or of administration upon any such estate, the executor or administrator shall have the right to the possession of the estate as it existed at the death of the testator or intestate, with the exception aforesaid; and it shall be the duty of such executor or administrator to recover possession of and hold such estate in trust to be disposed of in accordance with law." Act of August 9, 1876.

Art. 3413 (2046), (1993). "At the first term of the court after an inventory, appraisement and list of claims have been returned, it shall be the duty of the court, by an order entered upon the minutes, to set apart for the use and benefit of the widow and minor children and unmarried daughters remaining with the family of the deceased all such property of the estate as may be exempt from execution or forced sale by the Constitution and laws of the State, with the exception of any exemption of one year's supply of provisions." (Id.)

Art. 3414 (2047), (1994). "In case there should not be among the effects of the deceased all or any of the specific articles so exempted, it shall be the duty of the court to make a reasonable allowance in lieu thereof, to be paid to such widow and children, or such of them as there may be, as hereinafter directed." (Id.)

Art. 3421 (2054), (2001). "If, upon a final settlement of such estate it shall appear that the same is solvent, the exempted property, except the homestead, which has been set apart to the widow or children, or both, together with any allowance that has been received by them in lieu thereof, shall be subject to partition and distribution among the heirs and distributees of such estate in like manner as the other property of the estate." (Id.)

Art. 3422 (2055), (2002). "Should the estate, upon final settlement, prove to be insolvent, the title of the widow and children to all the property and allowances set apart or paid to them, under the provisions of this and of the preceding chapter, shall be absolute, and shall not be taken for any of the debts of the estate, except as hereinafter provided." (Id.)

Art. 3423 (2056), (2003). "In ascertaining whether an estate is solvent or insolvent, the exempt property set apart to the widow or children, or the allowance in lieu thereof, and the allowance provided for in the preceding chapter, shall not be estimated or considered as assets of the estate." (Id.)

Art. 3424 (2057), (2004). "The homestead shall not be partitioned among the heirs of the deceased during the lifetime of the widow, or so long as she may elect to use or occupy the same as a homestead, or

so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction, to use and occupy the same." Const., art. 16, sec. 52.

Art. 3425 (2058), (2005). "When the widow dies or sells her interest in the homestead, or elects to no longer use or occupy the same as a homestead, and when the proper court no longer permits the guardian of the minor children to use and occupy the same as a homestead, it may be partitioned among the respective owners thereof in like manner as other property held in common." Act of August 9, 1876.

Art. 3426 (2059), (2006). "The homestead rights of the widow and children of deceased are the same whether the homestead be the separate property of the deceased or community property between the widow and the deceased, and the respective interests of such widow and. children shall be the same in one case as in the other." (Id.)

Art. 3427 (2060), (2007). "The homestead shall not be liable for the payment of any of the debts of the estate, except for the purchase money thereof, the taxes due thereon or for work and material used in constructing improvements. thereon; and in this last case only when the work and material are contracted for in writing, with the consent of the wife, given in the same manner as required in making a sale and conveyance of the homestead." Const., art. 16, sec. 50.

Art. 3428 (2061), (2008). "The exempted property, other than the homestead, or any allowance made in lieu thereof, shall be liable for the payment of the funeral expenses and the expenses of last sickness. of deceased, when presented within the time prescribed therefor; but such property shall not be liable for any other debts of the estate." Act of August 9, 1876.

Several of the above quoted articles were amendments of, or based upon, statutes enacted prior to the Act of August 9, 1876, and should be considered in connection with them and decisions thereunder. Act of January 9, 1843, Pasch. Dig., art. 1061; Act of May 11, 1846, Pasch. Dig., art. 1107; Act of March 20, 1848, Pasch. Dig., art. 1305; Horn v. Arnold, 52 Texas, 161, and cases cited; Act of August 15, 1870, Pasch. Dig., art. 5487; Scott v. Cunningham, 60 Texas, 566. See, also, Zwernemann v. Von Rosenberg, 76 Texas, 522, 13 S. W., 485, under said Constitution of 1876.

Regardless of all questions as to solvency or insolvency, a surviving spouse, whether husband or wife, is entitled to hold and use the homestead exempt from forced sale for payment of his or her own debts, so long as he or she may choose to do so, even though such spouse be the sole remaining member of the family. Kessler v. Draub, 52 Texas, 575, 36 Am. Rep., 727; Blum v. Gaines, 57 Texas, 119; Trawick v. Harris, 8 Texas, 312; Zapp v. Strohmeyer, 75 Texas, 639, 13 S. W., 9; Childers v. Henderson, 76 Texas, 664, 13 S. W., 481. However, subsequent abandonment of the homestead by either spouse would end the right of such one to further claim exemption against debts of that character. Cox v. Shropshire, 25 Texas, 113; Shannon v. Gray, 59 Texas, 251;

O'Brien v. Woeltz, 94 Texas, 148, 86 Am. St. Rep., 829, 58 S. W., 943, 59 S. W., 535.

But exemption of the homestead from debts of the deceased husband, where the wife, or a minor child, or an unmarried daughter remaining with the family, survives the decedent, is a different matter, and rests upon principles which have their roots in the Constitution and in the above mentioned statutes, and which are discussed at length in the Logan case, and in cases therein cited, those discussions being, however, with special reference to insolvent estates.

The main general purpose of our Constitution and laws, in this regard, has been to exempt the homestead from forced sale, except for purchase money, taxes and improvements thereon. The three exceptions emphasize that purpose. If the lien for any such item be properly fixed, it may be enforced against homestead property of a decedent, just as against any other property, whether the estate of such decedent be solvent or not. Eliminating those three items from the equation, we have left the main purpose as to homesteads. Its conception is philanthropic and humanitarian; its outline is bold and comforting, like "the shadow of a great rock in a weary land"; its operation and effect are co-extensive and contemporaneous with lawful possession and exercise of homestead rights. Perhaps as supplying unequivocal and, possibly, added reason in support of the decision announced therein, many, and probably all, of the adjudicated cases, as we have seen, have mentioned, and some of them have stressed, possibly, the fact that the estate of the decedent was insolvent; but, upon principle, we can see no sufficient reason for resting any of those decisions upon that point, alone. None has ever been suggested, so far as we know. The issue of solvency or insolvency is not treated by the Constitution or the statutes as a proper basis for that distinction. Even equity makes no appeal in the premises; her pleading voice is stilled by reason of the fact that, except said three eliminated items, which must, in any event, be paid, no creditor of the decedent can justly or legally say that he extended credit based upon the homestead property in the sense that he expected, in any contingency not involving abandonment thereof, to be able to subject the homestead property to his debt.

Upon consideration of the opinions in said cases it is apparent from some of them that some confusion of ideas, and of principles as well, has grown out of the fact that article 3422 expressly provides that, *in insolvent estates*, "the title of the widow and children to all the property and allowances set apart to them, under the provisions of this and of the preceding chapter, shall be absolute, and shall not be taken for any of the debts of the estate, except as hereinafter provided," while article 3421, supra, which relates to solvent estates, makes no corresponding declaration concerning "title" to the exempt property and does not provide that such exempt property (with said exceptions), "shall not be taken for any debts of the estate."

Distinguished counsel for plaintiffs in error insist that this presents a proper instance for application of the well known rule of statutory construction, "expressio unius exclusio alterius est"; but we do not think so.

The difficulty and confusion which grow out of said difference between said article 3422 and said article 3421 disappear when a careful . analysis of said article 3422 is made, remembering that the former had its inception in section 45 of the Probate Act of March 20, 1848 (Gam. Laws, vol. 3, p. 249), one original and primary purpose of which was to prescribe a rule for descent, though' not of distribution, of exempt property, including the homestead, under circumstances therein defined; a purpose which was declared in Horn v. Arnold, 52 Texas, 161, and cases cited, prior to the adoption of our present Constitution, and abruptly ended, as this court has repeatedly held, by such adoption; it being provided, as we have seen in section 52 thereof, *supra,* that the course of descent of all homestead property in cases of intestacy, shall thenceforth be the same as that of other property, and as fixed by the general statute of descent and distribution.

Although our present Constitution, including said article 52, was ratified by the people of Texas on February 15, 1876, and thereupon became operative, and despite the direction given by said section 52 as to the course of descent of homestead property, at variance, as we have seen, with the provisions of said Act of 1848, the Legislature carried forward, into said Act of August 9, 1876, substantially the same provision as to the course of descent the title of homestead property, where the estate proves insolvent, expressly declaring that "the title of the widow and children to all the property and allowances set apart or paid to them, under the provisions of this and of the preceding chapter shall be absolute"; and then, as if by way of declaring a restriction or limitation upon the effect of the foregoing sweeping language relating to such vestiture of absolute title, added the provision that such exempt property and allowances "shall not be taken away except as hereinafter provided," the exceptions referred to being for purchase money, taxes, and work or material which are set out in said article 3427, relating to "homesteads," and "funeral expenses and expenses of last sickness of deceased, when presented within the time prescribed therefor," relating, not to homesteads, but to other "exempted property" and allowances in lieu thereof. In other words, the primary purpose of the words in article 3422 which deal with exemptions was, not to declare an exemption which did not otherwise or theretofore exist, and limit that exemption to insolvent estates, but to limit and restrict the force and effect of the preceding provisions of that article which declare a rule of descent of homestead property.

After said rule of descent was declared unconstitutional, in 1890, because of conflict with said section 52 (76 Texas, 522), said words of limitation were allowed to remain, and still appear, upon the statute book, although, in so far, at least, as homestead property is concerned, they are "as idle as a painted ship upon a painted ocean," unless it be to clearly express, as to insolvent estates, a rule concerning exemptions of homestead property which existed aforetime as to that character of property, whether the estate be solvent or insolvent, and which forms a

highly important feature of the great design and plan of homestead protection as wrought out in our Constitution and statutes, even if said article 3422 be omitted from the consideration.

Indeed, all of the provisions of said article 3422, including the above mentioned unconstitutional portion thereof, have been permitted to remain upon our statute book, as so enacted in 1876, through more than a generation and through the three general revisions of 1879, 1895 and 1911, although, in numerous opinions, beginning in 1890 with the Zwernemann case in 76 Texas, 522, this court has unequivocally declared their unconstitutionality. See cases cited in the Logan case, *supra*.

It is true that the other portions—the live portions—of said article 3422, which so declare said limitation upon the rule of descent thereinbefore set out, are not violative of, but are in perfect harmony with, said provisions of our existing Constitution and with all other existing statutes concerning exemptions, and so, as a matter of course, have not been held invalid. But it by no means follows, logically, that when an estate is solvent the converse is true, or that the rule as to homesteads is otherwise.

The rule to be applied to homestead property when the estate is solvent is a matter to be determined by other considerations, from a study of our Constitution and all related statutes, including said article 3422 as an incidental, but not as a vitally essential part.

. In view of the general and comprehensive design of homestead protection thus outlined in our Constitution and worked out, in detail, in our statutes, which were themselves enacted in the light of earlier statutes under former Constitutions and decisions construing them, we regard it as clear, upon principle, and accordingly hold, that our laws concerning exemption of homesteads relate to solvent and to insolvent estates alike, and that in no event, in the case at bar, under the ascertained facts, can the homestead property of the decedent, William Hoefling, Sr., be subjected to the debt of plaintiffs in error.

No reason has been suggested why, if his estate is in fact solvent, excluding the homestead as provided by said article 3423, said debt may not be enforced against such other portion of said estate; but upon that point we do not feel called upon to say anything further, as it is not in issue.

Said judgment of the Court of Civil Appeals is affirmed.